George WHITE, on behalf of himself and all others similarly situated, Plaintiff-Appellee,

v.

David MATHEWS, Secretary of the Department of Health, Education and Welfare, as an Individual and in his official capacity, Defendant-Appellant.

No. 1127, Docket 77–6015.

United States Court of Appeals, Second Circuit.

Argued May 23, 1977.

Decided July 18, 1977.

Thomas W. Stout, Atty., Office of Gen. Counsel, Social Security Div., Baltimore, Maryland (Barbara Allen Babcock, Acting Asst. Atty. Gen., Washington, D. C., Peter C. Dorsey, U. S. Atty. for the District of Connecticut, New Haven, Conn., Randolph W. Gaines, Chief of Litigation, Dept. of

HEW, Washington, D. C., on the brief), for defendant-appellant.

Raymond Richard Norko, Hartford, Conn. (Legal Aid Society of Hartford County; Robert P. Wenten, Litchfield Hills Legal Services; Donna J. Brooks, Legal Aid Society of Hartford County, Hartford, Conn., on the brief), for plaintiff-appellee.

Philip M. Gassel, New York City (Legal Services for the Elderly Poor, Toby Golick, Brooklyn, N. Y., Jane Greengold Stevens, New York City, John C. Gray, Jr., Brooklyn Legal Services, Corp. B., Brooklyn, N. Y., on the brief), amici in support of plaintiff-appellee.

Before FEINBERG and DANAHER,* Circuit Judges, and DOOLING, District Judge.**

FEINBERG, Circuit Judge:

The Secretary of the Department of Health, Education and Welfare appeals from a successful challenge by plaintiff George White to the glacial pace at which the Social Security Administration (SSA) has adjudicated claims to disability payments. The United States District Court for the District of Connecticut, T. Emmet Clarie, *Chief Judge,* found the administrative delays in Connecticut unreasonable, and ordered reductions in those delays according to a schedule whose first stage would become effective July 1, 1977. Under the judgment of the district court, claimants forced to wait for a decision longer than the prescribed maximum periods are to be paid benefits until they are ruled ineligible. On appeal, the Secretary argues that the district court lacked subject matter jurisdiction, that the case is moot, and that in any event the delays should not be held unreasonable in view of extraordinary circumstances that aggravated the administrative burden and in view of Congressional reaction to the problem. We find none of these arguments persuasive and we affirm the order of the district court.

---

* Of the District of Columbia Circuit, sitting by designation.

## I

A brief description of the statutory scheme will be helpful in understanding the issues before us. The administrative process dealing with claims for disability insurance under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., is quite complex, involving both state and federal agencies. As the Supreme Court explained in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), state agencies first determine "whether a disability exists, when it began, and when it ceased. . . . The standards applied and the procedures followed are prescribed by the Secretary . . . who has delegated his responsibilities and powers under the Act to the SSA." To establish disability and maintain his right to continued benefits, a wage earner must adduce "such medical and other evidence of the existence [of the disability] as the Secretary may require," 42 U.S.C. § 423(d)(5), to prove that he cannot "engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). This showing is necessary both upon initial application and at continuing-eligibility investigations. The latter periodic inquiries involve a physician and another person trained in disability evaluation, who rely on information obtained from the wage earner himself and from his sources of medical treatment. The state agency may also arrange for an examination by an independent physician.

If the agency concludes, either initially or upon reexamination, that the claimant is not entitled to benefits, he is notified of this tentative conclusion and is given an opportunity to submit additional evidence. The state agency then makes its final determination, which the SSA Board of Disability Insurance reviews. An unsuccessful claimant can seek reconsideration by the state agency, whose decision is again subject to SSA review. A losing claimant is then entitled to a hearing before an administrative law judge, which entails a personal

---

** Of the Eastern District of New York, sitting by designation.

appearance and a full evidentiary proceeding. 42 U.S.C. § 405(b)(1970). Review of the administrative law judge's decision is available at the discretion of the Appeals Council of the SSA Hearings and Appeals Bureau. Thereafter, a claimant can obtain judicial review of an adverse determination under § 205(g) of the Act, 42 U.S.C. § 405(g).

This case only concerns delay at the administrative law judge hearing stage, and the facts regarding the claim of wage earner George White are undisputed. White filed an application for disability insurance benefits in the summer of 1972. He claimed to be totally disabled because of cirrhosis of the liver and acute pancreatitis, and he was awarded benefits beginning in January 1973. The agency reexamined White's case later that year, and after receiving a doctor's report, determined that White's disability had ceased in November 1973, and that he was last entitled to benefits for January 1974.

White requested reconsideration, but in early July 1974 he was told that the agency would not change its decision. On July 29, he requested a hearing before an administrative law judge. The hearing did not take place until April 29, 1975, and the administrative law judge issued his decision (adverse to White) on May 21, 1975—about ten months after White's request for a hearing. Subsequently, the Appeals Council of the SSA reviewed the case, took some new evidence, and in December 1975 found that White's disability had not ended in November 1973, but had continued. In December 1975, the SSA reinstated White's benefits and paid him back benefits totalling more than $3,000. At that point, White had not received benefits for almost two years.

In the meantime, however, White had taken further steps to obtain his benefits. In January 1975, while waiting for the

hearing he had requested over five months earlier, White filed a class action in the district court, seeking declaratory and injunctive relief against the long hearing delays in Connecticut.[1] In March 1975, White moved for certification of the class, which Judge Clarie granted on July 18, 1975.[2] In the district court action, both White and the Secretary moved for summary judgment. The Secretary also moved to dismiss the complaint, arguing lack of jurisdiction and mootness. In a thorough opinion, Judge Clarie denied defendant's motions and granted summary judgment for plaintiff and his class.

The judge found that the average time between request for a hearing before an administrative law judge and entry of his final decision for the period of January 1973 through March 1975 was 211.8 days for residents of Connecticut, and 195.2 days nationally. Concluding that these delays were unreasonable and violated the Social Security Act, the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the due process clause, the judge ordered that maximum delays between request for a hearing and final decision by an administrative law judge be reduced to 180 days after July 1, 1977; to 150 days after December 31, 1977; and to 120 days after July 1, 1978. Claimants who are made to wait longer are to receive benefits automatically from the expiration of the allotted time period until a decision is rendered. The Secretary appeals, arguing that the court had no jurisdiction, that the action is moot, that class certification was improper and that the judge was wrong on the merits.

II

*Jurisdiction*

Judge Clarie found subject matter jurisdiction under 28 U.S.C. § 1361, which gives district courts "original jurisdiction of any

1. The situation in Connecticut was not atypical. See *Wright v. Mathews,* Civil No. 75–1537 (N.D.Ill. June 6, 1977); *Barnett v. Mathews,* Civil No. 74–270 (D.Vt. Feb. 22, 1977).

2. The class was certified as "all potential Social Security Disability recipients, who have pending petitions for a hearing before the Administrative Law Judge and have not had a hearing scheduled promptly and the matter concluded within a reasonable time."

action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In *Frost v. Weinberger,* 515 F.2d 57 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976), we held that 28 U.S.C. § 1361 was a sufficient predicate for district court jurisdiction over an action to require the SSA to provide an evidentiary hearing before terminating survivors' benefits under the Act. The analogy to this case is clear, and recent Supreme Court cases seem to leave open the possibility that relief can be available here under § 1361. See *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 322 n. 12, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Appellant does not attempt to distinguish *Frost,* but argues that the Social Security Act itself precludes mandamus review. Section 205(g), reproduced in the margin,[3] allows a claimant to obtain judicial relief only after a final agency decision. And § 205(h) provides: "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Appellant claims that this preclusion includes § 1361, because otherwise the requirement of § 205(g) for exhaustion of administrative remedies would be circumvented. Appellant cites *RoAne v. Mathews,* 538 F.2d 852 (9th Cir. 1976), as authority. But in that case, plaintiffs attempted to invoke § 1361 to gain premature judicial review of the question whether they qualified for social security benefits. This action, on the other hand, does not affect the merits of the underlying statutory issue—

whether claimants in White's class are entitled to benefits—that will ultimately be subjected to the administrative process. Here, the district court was asked merely to require the agency to conduct its proceedings with reasonable speed. As will be seen below, the agency has a clear obligation under the statute to do so. The Secretary argues that mandamus is inappropriate because the timing of a hearing rests in his discretion. But the scope of the Secretary's discretion is the very issue before us, since we do not believe that he has discretion to deny a reasonable opportunity for a hearing. See Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 354 (1967). Under these circumstances, we follow *Frost* and hold that the district court properly predicated jurisdiction on § 1361.[4] This conclusion leaves § 205(g) undisturbed as the exclusive avenue to the courts for a claimant seeking to challenge the merits of an SSA denial of benefits under the Act. See *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

*Mootness*

Appellant argues to us, as he did below, that this case became moot when White received his hearing and decision from the administrative law judge. The complaint sought only declaratory relief and a mandatory injunction to compel the scheduling of a hearing. White's hearing before an administrative law judge in April 1975 thus ended his individual controversy with the SSA over the issue in this case. In appel-

---

**3.** Section 205(g) provides, in pertinent part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his princi-

pal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

**4.** This conclusion makes it unnecessary for us to consider the alternative grounds of jurisdiction advanced by White, namely, 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). In light of *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), White abandoned in this court his jurisdictional argument based on the Administrative Procedure Act.

lant's view, that barred continuation of this action, despite the fact that White filed it as a class action. Judge Clarie did not certify the class until July 18, 1975, almost three months after the hearing before the administrative law judge. The argument is that White's case became moot before the class was certified, and "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

■ There is, however, no question that White had alleged a substantial controversy when he filed suit in January 1975, and nothing had changed his position when he moved for class certification in March of that year. The existence of a controversy at that point was sufficient, on the facts of this case, to enable this suit to proceed as a class action. In *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975), the Supreme Court acknowledged the possibility that special allowance may at times be necessary for claims that evaporate as the suit unfolds:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

The question is whether to allow class certification in this case to relate back at least to March 1975, when White moved to certify the class and still had not received a hearing before an administrative law judge. Refusing to do so would mean that the SSA could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification. *Cf. Workman v. Mitchell,* 502 F.2d 1201, 1208 (9th Cir. 1974); *Lamont v. Postmaster General of the United States,* 229 F.Supp. 913 (S.D.N.Y.1964) (3-judge court) (dissenting opinion), rev'd, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). We do not suggest that this occurred here, but we must take notice of the "reality" of that possibility in the future. Moreover, the key issue here—whether SSA's hearings are unreasonably delayed—is a live one still for members of the class. The court was fully apprised of the broad nature of the controversy well before White received his hearing before the administrative law judge. If Judge Clarie had been concerned about mootness he obviously could have ruled on the class certification motion more quickly. See *Frost v. Weinberger,* supra, 515 F.2d at 64. But a district court should have enough time to consider these important issues of class status carefully, particularly when no purpose would be served by rushing a ruling. The main reason for requiring that the named plaintiff have a "live" controversy is to assure adequate representation of the interests of the class. *Id.* Counsel for the class here has argued energetically and capably throughout, as the outcome below bears out. There is no reason to keep these efforts on behalf of the class in check until the SSA delays so long that it not only provokes a suit but also allows time for a carefully considered ruling on the class issue. Under all the circumstances, we do not think the case is moot.[5]

**5.** Judge Clarie's opinion mentions two "named intervenors": Alice Lockwood, who waited over a year between her hearing request and the administrative law judge's final decision, which came in October 1975; and Helen Caldwell, who waited six months for a hearing and ruling on her appeal from denial of disability status after she underwent surgery for lung cancer. From the record, it is unclear whether their motions to intervene were ever actually granted, or when that occurred. We note that if Lockwood's motion to intervene was granted before the hearing and decision by the administrative law judge on White's claim, the action was clearly not mooted before certification of the class in July 1975.

## Class Certification

■ Appellant's last preliminary challenge is directed at the certification of the class. First, he argues, White was not a member of the class when it was certified, but as we have just explained, certification can relate back so this case escapes the pitfall of *O'Shea v. Littleton, supra.* Also, we are urged, the plaintiffs' claims lack the uniformity of legal and factual issues that is necessary before a case can come within F.R.Civ.P. 23(a)(2). However, plaintiffs all seek social security disability benefits through the identical administrative process, all have requested hearings after initial adverse rulings, and all have endured long delays before hearing. Judge Clarie correctly concluded that these common elements justified class certification.

## III

■ We turn now to the merits of the controversy before us. On the record before him, Judge Clarie ruled:

[T]he lengthy and persistent delays experienced in the Title II disability appeals system in Connecticut averaging 211.8 days between January 1973 and March 1975 . . . are unreasonable. Such delay denies due process rights to aggrieved applicants and conflicts with the statutory purposes and provisions of the Social Security and Administrative Procedure Acts. These acts require that the Agency act with reasonable dispatch.

There seems to be no quarrel with the judge's finding of the average length of delay. Appellant argues instead that the delays did not violate the statutes cited above or the Constitution, that the district court should have deferred to administrative and congressional efforts to remedy the problem of hearing delay and that, in any event, the court should not have granted prospective payments.

Section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), instructs the Secretary to make "decisions as to the rights of any individual applying for a payment" of benefits. Thereafter, upon request of a claimant, the Secretary is directed to provide him with "reasonable notice and an opportunity for a hearing" with respect to the decision complained of.[6] We read this as giving the claimant a right to a hearing within a reasonable time and we do not understand the Secretary to dispute this construction. Although what is reasonable depends upon a variety of circumstances, that statutory command should not be ignored. The disability insurance program is designed to alleviate the immediate and often severe hardships that result from a wage-earner's disability. In that context, delays of the better part of a year in merely affording an evidentiary hearing detract seriously from the effectiveness of the program. Perhaps this unfortunate impact might be diminished to a tolerable level if a high percentage of claimants seeking hearings before an administrative law judge were not actually entitled to benefits. But such hearings have led to reversals in more than half the cases heard.[7]

The Supreme Court noted in *Mathews v. Eldridge,* 424 U.S. 319, 342, 96 S.Ct. 893,

---

6. Section 205(b) reads, in pertinent part:

The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, husband, widower, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing,

affirm, modify, or reverse his findings of fact and such decision.

7. House Comm. on Ways and Means, Committee Staff Report on the Disability Insurance Program (July 1974) at 1. In *Mathews v. Eldridge,* 424 U.S. 319, 346 n. 29, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court focused on the statistical universe of all denials of benefits, not just the ones that are appealed, because that case concerned the overall fairness of the entire procedural system. In our case, the high rate of success for claimants pursuing appeals is meaningful as an indication that a large number of the victims of administrative delay actually are disabled and entitled to benefits.

906, 47 L.Ed.2d 18 (1976), that "[i]n view of the torpidity of this administrative review process, . . . and the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant." True, the Court ruled that this hardship did not constitutionally compel a hearing prior to termination because, among other things, of the potential sources of temporary income for the claimant and the exigencies of budget and personnel. But the absence of pre-termination hearings makes it all the more important to expedite adjudication of claims of erroneous termination.

As against this, the Secretary points to the serious problems with which the SSA has had to cope. A flood of claims for benefits followed passage of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq., and Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., which provided supplemental security income (SSI) for the aged. Legislative obstacles prevented efficient deployment of three distinct corps of hearing officers, who were separately handling Title II cases, black lung cases, and SSI cases, to dispose of the backlog involved here. And increasing the hearing staff was difficult because other civil service hearing examiner positions were paid more.

Judge Clarie took note of these problems, and recognized that the SSA had, commendably, tried to overcome them. The SSA has increased support personnel and equipment, hired staff attorneys, and screened cases to identify candidates for favorable action without any need for a hearing. Nevertheless, Judge Clarie found that the SSA was not justified in forcing claimants to endure so many months of delay while they went without benefits. For claimants like White who eventually win reinstatement of benefits after an ad-

ministrative cut-off, the question truly is, as Judge Clarie found:

> not whether there shall be costs incurred, but who shall bear them while the governmental machinery responsible for providing appeals puts itself in order. When the government does not act with reasonable promptness, those claiming total disability are required to bear an unreasonable delay and suffer unwarranted deprivation of that which is lawfully theirs.

Cf. NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 263–64, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).[8] Like the district judge, we are sympathetic to the administrative problems that beset the SSA, but we do not believe that these difficulties establish that claimants in White's class have been given a "reasonable . . . opportunity for a hearing."

The Secretary also relies on recent legislative history to support his contention that the SSA hearing delays do not violate the Act. We are told that Congress rejected the idea of imposing precise time limits on the SSA, preferring not to sacrifice quality of hearing in the name of speed; and that Congress has recently found that in light of the special problems plaguing the SSA, no unreasonable delay existed. Appellant refers to the special investigation conducted by the House of Representatives Subcommittee on Social Security in the fall of 1975. In the wake of that study's full explication of the delay problem and its causes, Congress authorized HEW to employ its hearing examiners more effectively, but imposed no specific time limits for disability hearings.[9] Instead, appellant insists, Congress left the scheduling of the hearing entirely up to the agency's discretion.

■ We do not believe that this legislative history changes the meaning of § 205(b). Congress did not abandon the requirement of reasonableness, and the de-

---

8. In that case, a similar concern for the financial plight of statutorily protected workers led the Supreme Court to disallow the reduction of back pay awards because of slow NLRB disposition of the case. The Court had to balance countervailing interests of the innocent wage

earner and the party harmed by the delay; here, the claimants are both innocent and hurt by the delay.

9. Pub.L. No. 94–202, 89 Stat. 1135 (1976).

cision not to impose precise limits should not be interpreted as an endorsement of the delays. SSA Commissioner James B. Cardwell had represented to Congress that by June 1977 hearing delays would not exceed 90 days.[10] The district court's imposition of a time schedule that allowed the SSA from 90 to 30 days longer than its own projection is hardly at odds with the expectations of Congress.

■ Appellant also argues that, in any event, the district court acted improperly in ordering the prospective payments to claimants who endure delays longer than the schedule allows. We are told that Congress authorized prospective payments only in a narrow category of cases which does not include this situation. See 42 U.S.C. § 405(q). But the absence of a specific congressional provision does not bar the federal court's exercise of its remedial power when it finds that the Secretary has violated the statute. In providing for disability benefits, Congress intended to give a disabled worker a ready source of support, financed in part by a tax in the past on his own earnings. The statute was intended to make it unnecessary for an eligible worker to resort to the sometimes demeaning procedure of asking for local relief,[11] as plaintiff White was compelled to do here. Judge Clairie's order is a laudable effort to carry out this Congressional purpose in the difficult circumstances of this case. According to his prescribed schedule, the initial 180-day period did not begin to run until July 1977, which left the SSA more than a year after entry of the order in which to reduce the delays. The order was not given retroactive effect, and it allowed exceptions for cases in which the claimant causes the delay, or where the administrative law judge determines that additional medical evidence must be gathered. Moreover, payments under the order are to cease if the administrative law judge rules against the claimant, in which case the SSA is entitled to full recoupment for interim amounts paid in the meantime. We find no error in this equitable solution to the difficult problem of balancing administrative difficulties and wage earners' needs. Cf. Nader v. FCC, 172 U.S. App.D.C. 1, 520 F.2d 182, 205–07 (1975); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961); Phillips v. Dawson, 393

10. Following his appearance before the Subcommittee, Cardwell was asked to respond in writing to a number of specific questions from the Subcommittee. Regarding the hearing delays, the question and answer were as follows:

You stated on page 10 of your prepared statement that you are going to have a goal of a 90-day waiting period for a hearing but then you emphasized the difficulty of the procedures where medical examinations may be necessary and medical and vocational experts used.

In view of the present backlog and the nature of the hearing process, what is your best estimate of when this goal will be met? How many additional ALJ's will be required to meet this goal? Is this goal realistic?

By June 1976, we expect to be able to process the title XVI cases being heard by SSI hearing examiners within 90 days of receipt of the request for hearing. With respect to the cases which are now being handled by ALJs (e. g., title II, concurrent title XVI and title II, title XVIII, etc.), we hope to be able to reach our goal by June 1977, of issuing the hearing decision within 90 days of the request for hearing. In order to reach this goal we must eliminate the current backlog and to do this we will need to have flexibility in using the current hearing manpower available. Authorization will be needed for all hearing officers to hear cases under titles II, XVI, and XVIII. Once the backlog is eliminated, we will be able to handle anticipated receipts with the budgeted 675 presiding officers.

The 90-day processing goal is, in our opinion, realistic.

Delays in Social Security Appeals: Hearings before the Subcomm. on Social Security of the House Comm. on Ways and Means, 94th Cong., 1st Sess. 74 (1975).

11. The Senate Finance Committee minority report, supporting H.R. 7225 (which Congress ultimately passed to create the disability insurance program), said:

Under a sound social-insurance program, Americans should be protected against the fundamental hazards which would otherwise destroy their earning power and reduce them to beggary. Granted that some form of income is necessary to provide for those who are unable to provide for themselves, it is far preferable that these persons should remain proud, self-sufficient Americans rather than become hat-in-hand pleaders for public charity.

1956 U.S.Cong. Code & Admin.News, p. 3942.

861

F.Supp. 360 (W.D.Ky.1975). At the same time, we emphasize that Congress can always assert its power to give the district courts more specific direction. But nothing so far seems to rule out the time limits imposed here.

■ Appellant also argues that prospective payments cannot issue because 42 U.S.C. § 405(i) allows actual payments only upon a "final decision of the Secretary or upon final judgment of any court . . . that any person is entitled to" the payments. This section is plainly directed at the ordinary situation in which payments become due after favorable administrative adjudication, or judicial review under § 405(g). We do not read § 405(i) as excluding the possibility of interim payments ordered by a court exercising its remedial power.

The judgment of the district court is affirmed.[12]

12. In view of our holding, we need not decide whether the delays also violated the Adminis-    trative Procedure Act or the due process clause.