Frederick GOULET, on behalf of himself and all others similarly situated

v.

Richard S. SCHWEIKER, in his official capacity as Secretary of the Department of Health and Human Services and Donald T. Regan, in his official capacity as Managing Trustee of the Federal Disability Insurance Trust Fund.

Civ. A. No. 82–3.

United States District Court,
D. Vermont.

Feb. 24, 1983.

Thomas Garrett and Michael D. Sirotkin, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

Kirk I. Victor, U.S. Dept. of Justice, Washington, D.C., for defendants.

COFFRIN, Chief Judge.

This is an action brought by Frederick Goulet challenging the decision of the defendant Secretary of the Department of Health and Human Services (hereinafter "the Secretary"), to reduce the amount of Disability Insurance Benefits (DIB) benefits awarded to plaintiff under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., pursuant to 42 U.S.C. § 1320a–6, as an offset to the excess supplemental security income (SSI) benefits already received by plaintiff. Section 1320a–6 provides that where an individual is found entitled to retroactive Title II benefits for one or more months during which he received SSI benefits, the retroactive benefits otherwise payable shall be reduced by an amount equal to the SSI benefits which would *not* have been paid had the individual received the Title II benefits at the time they were due.[1] The

provision was enacted to prevent "windfalls" of SSI payments which occurred when a person received retroactive Title II benefits for a period during which he had already received SSI benefits. *See* S.Rep. No. 408, 96th Cong. 2d Sess. 78, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1356. The provision became effective on July 1, 1981.[2]

Plaintiff alleges that the Secretary has improperly applied this statutory provision to claims which were adjudicated or determined before July 1, 1981. Plaintiff seeks to have a nationwide class certified for the purpose of bringing a class action to challenge the Secretary's alleged policy of deliberately delaying the adjudication or determination of joint DIB and SSI claims during the months prior to July 1, 1981. Such a delay would then allow the Secretary to apply the new amendment and authorize similar offsetting deductions to claims which the plaintiffs allege should be insulated from such deductions. The parties differ as to their definitions of "adjudication" and/or "determination" and over which is the applicable term. Two other individuals have filed motions to intervene alleging that their benefits have been similarly reduced.[3] The question on the merits turns upon what is meant by the words "entitlement for which is determined on or after [July 1, 1981]" contained in Pub.L. 96–265; 42 U.S.C. § 1320a–6 note. A preliminary issue, that of jurisdiction, must be resolved before the court can reach the merits, however. The resolution of this issue depends upon the characterization of plaintiff's claim.

### Background

Plaintiff applied for DIB and SSI benefits based upon disability on June 17, 1980.

---

1. 42 U.S.C. § 1320a–6, section 1127 of the Social Security Act was added by section 501 of Pub.L. 96–265, 94 Stat. 469–70 (1980).

2. The actual language with respect to the effective date of section 501 of Pub.L. 96–265, contained in subsection (d), provided that: "The amendment made by this section shall be applicable in the case of payments of monthly insurance benefits under Title II of the Social Security entitlement for which is determined on or after the first day of the thirteenth month which begins after the date of the enactment of

this Act." The Act was enacted June 9, 1980. The first day of the thirteenth month is July 1, 1981.

3. Robert Sanderson and James J. Kelly filed motions to intervene. They alleged fact patterns and grievances similar to those of Goulet. For the purposes of this opinion, for reasons which will subsequently become apparent, we will refer only to Sanderson's petition to intervene.

Both applications were denied originally and again upon reconsideration. An Administrative Law Judge (ALJ) conducted a hearing and issued a decision on June 22, 1981. The ALJ determined that plaintiff was disabled as of August 28, 1979; his Title II benefits were to begin in February 1980, after the statutory five-month waiting period. *See* 42 U.S.C. § 423(c)(2). Plaintiff's entitlement to SSI benefits was effective June 17, 1980, the date of his application. On July 2, 1981, a benefit authorizer acted on plaintiff's claim. On July 22, 1981, plaintiff was sent an SSI payment entitlement notification, and his SSI benefits began shortly thereafter. On September 17, 1981, plaintiff was sent a Title II award certificate, which explained the new provisions of section 1320a–6 and stated that plaintiff's benefits were subject to reduction if he fell within the statutory specifications. On November 4, 1981, plaintiff was notified that section 1320a–6 was applicable and that his benefits would be reduced. This notice explained that plaintiff's social security benefits were being reduced because he had received supplemental security income payments during the same period for which he received social security benefits. The notice went on to say that if plaintiff had any questions, he could contact any social security office. At the bottom of the form in bold print it was stated: "Important: See other side for an explanation of your appeal rights and other information." On October 30, 1981 plaintiff received a check in the amount of $3887 for partial payment of the retroactive benefits due him. There was no interruption in the payment of plaintiff's SSI benefits. On January 7, 1982, plaintiff filed the initial complaint in this action in this court. On the same day plaintiff filed a request with the Department of Health and Human Services for reconsideration of the reduction in his Title II retroactive benefits.

On June 28, 1982, Robert Sanderson petitioned the court to intervene in the present action. The government has no objection to such intervention. Sanderson was an applicant for DIB and SSI benefits who received a favorable ALJ decision as to his eligibility on April 8, 1981. Sanderson's award of retroactive benefits, similarly to Goulet's, was later reduced to offset the SSI benefits paid to Sanderson during the period of Title II retroactive eligibility. Like Goulet, Sanderson requested reconsideration; it was denied. He then requested and received a hearing before an ALJ. On October 25, 1982, the ALJ decided in favor of Sanderson. That is, the ALJ determined that the offset by the Secretary of Sanderson's social security benefits was incorrect. The opinion directed the Secretary to pay to Sanderson the amount of monies withheld.[4]

### Jurisdiction

The Secretary has filed a motion to dismiss, alleging that the plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 405(g), effectively precluding the jurisdiction of this court. Plaintiff asserts jurisdiction pursuant to 42 U.S.C. § 405(g) (the Social Security Act) and 28 U.S.C. § 1361 (mandamus jurisdiction).

(a) *The Social Security Act (42 U.S.C. § 405(g))*

The Social Security Act provides an exclusive avenue for pursuit of claims involving benefits under the Act. It does not preclude judicial review, but prescribes procedures which must be complied with prior to any such review. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), which incorporates section 205(g) of the Act, 42 U.S.C. § 405(g), provides SSI recipients with an opportunity for judicial review of claims under the Act. Section 405(g) states in relevant part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .

Presumably, therefore, the ALJ decision has become final.

---

**4.** The Appeals Council had the option, if exercised within 60 days, of reviewing the decision. The court is not aware that this has been done.

This jurisdictional statute is made exclusive by section 205(h) of the Act, 42 U.S.C. § 405(h), (also incorporated by section 1631(c)(3)) which states:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

The United States Supreme Court construed these statutory provisions in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and held that, in order for a district court properly to entertain an action under section 405(g), two conditions must be satisfied. First, a claim for benefits must have been presented to the Secretary. Second, there must have been a final decision after a hearing. The Supreme Court has held, however, that only the first condition is a mandatory requirement. The second—the requirement that the claimant exhaust his administrative remedies—can be waived either by the Secretary, *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) or, under certain circumstances, by the court on its own determination. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Plaintiff in the instant action characterizes his status as that of a recipient, not a claimant, and argues that by virtue of the administrative process involving a hearing by an ALJ and the Secretary's approval of the decision that plaintiff was disabled and entitled to benefits, he has met the literal requirements of section 405(g). In other words, plaintiff asserts that he has presented a claim to the Secretary and that a final decision has been made. Defendants, on the other hand, characterize plaintiff's claim as one totally separate and distinct from his initial claim for disability benefits.

Defendants assert that plaintiff is now contesting not whether or not he is entitled to disability benefits, but rather the amount of disability benefits to which he is entitled.

Plaintiff admits that he filed for reconsideration of the reduction of his retroactive payments. Title 20 C.F.R. § 404.907 (1982) makes it clear that reconsideration is merely the first step in the administrative review process that the agency provides if a claimant is dissatisfied with an initial determination.[5] Furthermore, it is clear that the agency considers the decision to reduce benefits and the amount offset as one which is subject to the administrative process. The government filed a copy of the Federal Register, 47 F.R. 4985, 4987 (February 3, 1982), which contained the public commentary in response to the SSA's Notice of Proposed Rulemaking regarding offsetting previously received supplemental security income payments against retroactive Title II benefit payments for the same period:

*Issue:* Initial determinations.

Nine commenters raised the question of whether SSI offset computations and refigurings are considered initial determinations subject to appeal and whether the rules of administrative finality apply.

*Response:* These computations and refigurings are considered initial determinations and are subject to the rules on appeal and administrative finality in § 404.902.

The Code of Federal Regulations, the avenue through which the Secretary propounds rules to administer the Act, was amended on February 3, 1982 to reflect this. See 20 C.F.R. § 404.902 (1982) (Administrative actions that are initial determinations). Plaintiff argues that since the effective date of the statute is prior to the effective date of the regulations, they should not be applicable. It is settled, however, "that the regulations apply to pending suits seeking

---

5. The administrative review process consists of the following stages: 20 C.F.R. 404.907–404.921 (1982) (reconsideration of initial decisions on a claim); 20 C.F.R. 404.929–404.961 (1982) (Hearing procedures); 20 C.F.R. 404.967–404.981 (Appeals Council review after adverse hearing). If review by the Appeals Council is declined, the hearing decision is the final decision of the Secretary subject to judicial review under 42 U.S.C. § 405(g); otherwise the Appeals Council's decision constitutes the final decision, 20 C.F.R. 404.955, 404.981 (1982).

judicial review of administrative determinations made prior to that effective date." *Decker v. Harris,* 647 F.2d 291, 294 n. 2 (2d Cir.1981) (quoting *Vega v. Harris,* 636 F.2d 900, 903 (2d Cir.1981)). Even before the amendment relating specifically to offsetting retroactive benefits was promulgated, however, section 404.902(c) provided that a challenge to the amount of benefits due was an initial determination subject to administrative and judicial review. According to the federal regulations, therefore, plaintiff's individual claim is only at the initial stages of the administrative process and a final decision as to that claim has not been had.

Plaintiff makes a further claim, however, that by promulgating the Claims Manual provisions,[6] the Secretary has taken a final position in this matter. Plaintiff cites as authority *Jones v. Califano,* 576 F.2d 12 (2d Cir.1978), a case in which the court held that the Secretary's position, one which had been established through an "SSA Regional Program Circular," which plaintiff alleges to be similar to the Claims Manual in the present case, was equivalent to a final decision and therefore satisfied that requirement of section 405(g). *Id.* at 19.

Upon closer scrutiny, it is apparent that *Jones* is distinguishable from the present case. In that case the Appeals Council, the quasi-judicial branch of the SSA, had ruled on three separate occasions that the method the Secretary employed in computing a reduction in benefits was invalid. The Secretary had ample time in which to conform his position to comport with the Appeals Council rulings. Instead, during the pendency of Jones' appeal, the Secretary distributed new forms to the state agencies involved in calculating and distributing bene-

fits which explicitly stated that the computation method to be used was the same one previously ruled invalid. 576 F.2d at 19. The court phrased the issue presented in *Jones* as the novel question of whether judicial relief was available to compel the Secretary to pay benefits to claimants whom the SSA's own Appeals Council had consistently ruled were entitled to them. *Id.* at 17. The *Jones* court answered in the affirmative, holding that judicial review was available under section 405(g) because the Secretary's demonstrated recalcitrance was equal to a "final position" as that term is used in the statute.

The circumstances in *Jones* were quite extreme and they are not, as yet, mirrored here. Although the SSA did hold public hearings before promulgating the Claims Manual and it therefore can be argued that the Manual represents the final decision of the Secretary respecting the correct application and implementation of section 1320a–6, that contention is not persuasive. The impact and significance of the Claims Manual directives can not compare to that of a ruling by the Appeals Council. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). Plaintiff's claim as to the effective date of section 1320a–6 presents a judicial case of first impression. The administrative agency itself has not yet had an opportunity to consider fully plaintiff's claims and construe the statute. As the term "final decision" is used in section 405(g), it refers to the administrative review process, not to the promulgation of the Claims Manual directives after public hearings. Given the procedural infancy of plaintiff's claims, it cannot be said that the Secretary has taken a final position as to them.

---

**6.** As reproduced in defendants' brief, the reliability of which we have no reason to question, the Claims Manual contains instructions on how to implement recoupment under 42 U.S.C. § 1320a–6. The relevant provisions read:

The new provision is effective in all RSDI cases finally adjudicated after June 30, 1981. The definition of adjudication date found in CU 2001(f) applies here as well:
a. the time the claims authorizer signs the award or disallowance in non-DOFA cases,

b. the time the claims representative signs the award or disallowance in DOFA cases,
c. the time the disability examiner signs the disability determination if the claim is not also reviewed by a claims authorizer, or
d. if later than a, b, and c, the first day on which all conditions of entitlement are met. CM A5470.D.1.

The Supreme Court has stated that the requirement in section 405(g) that there be a final decision by the Secretary after a hearing is "central to the requisite grant of subject matter jurisdiction...." *Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899 (quoting *Salfi,* 422 U.S. at 764, 95 S.Ct. at 2466). However, in both of those cases the Court went on to waive the exhaustion requirement, finding that there had been a sufficient decision by the Secretary to satisfy the statute. *Eldridge,* 424 U.S. at 329, 96 S.Ct. at 900; *Salfi,* 422 U.S. at 767, 95 S.Ct. at 2467. Plaintiff argues that these cases therefore dispense with the requirement of a hearing, and that this court should so hold. Careful consideration dictates against such an analysis. The *Salfi* and *Eldridge* precedents have been read narrowly by the Supreme Court and limited to instances in which constitutional issues were raised and a denial of section 405(g) jurisdiction would close "the federal forum to the adjudication of colorable constitutional claims." *See Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). That possibility has not yet been presented by this case.

It is indisputable that an administrative agency is without authority to determine questions of constitutional dimension. *Salfi,* 422 U.S. at 765, 95 S.Ct. at 2466. Obviously, in such situations exhaustion is not required. *Id.* It is equally true that unnecessary constitutional adjudication should be avoided if fairly possible. *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 692–93, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) (quoting *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)). Although plaintiff is alleging constitutional violations, the issue in the present case is, in the first instance, one of statutory construction. Plaintiff and defendant disagree as to what Congress meant when it used the phrase "entitlement for which is determined on or after [July 1, 1981]." Plaintiff contends that the date of the ALJ decision is the determinative date for application of the statute. Defendants contend that the statute should be applied with reference to the date when a benefit authorizer signed a Determination of Award form. Where the legal issue is statutory, the agency does have the authority to decide it, subject, of course, to judicial review. *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 346 (3d Cir.1977).

Because there is a plainly dispositive statutory basis for resolving this conflict which may obviate the need to reach any constitutional issues, and because a court owes deference to an agency's interpretation of a statute which it is charged with administering, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), exhaustion should be required in this case. It will enable the agency to interpret the statute, keeping in mind plaintiff's claims as to its effective date, and correct its errors, if any; to afford the parties and the courts the benefits of the agency's experience and expertise; and to compile a record which is adequate for judicial review. These are the purposes which the exhaustion doctrine strives to serve. *See Salfi,* 422 U.S. at 765, 95 S.Ct. at 2466. Requiring exhaustion in the instant case is particularly appropriate in view of the fact that intervenor Sanderson obtained full benefits by pursuing his administrative remedies. Contrary to plaintiff's contentions, requiring exhaustion would not be futile. This is not a case where further exhaustion would involve "a commitment of administrative resources unsupported by any administrative or judicial interest." *Id.* at 766, 95 S.Ct. at 2467. Accordingly, this court will not waive the exhaustion requirement in this case. This decision is in accord with the decisions in *Salfi; Eldridge,* and *Diaz,* which all represent various accommodations of the sometimes competing needs of the administrative process for time in which to arrive at a mature judgment on often complex legal issues, of the judicial process for the avoidance of multiple applications for judicial review, and of similarly situated benefit applicants for the avoidance of futile administrative delays in the determination of their benefits.

Plaintiffs have expressed continuing concern that if this court does not exercise

jurisdiction by waiving the exhaustion of administrative remedies requirement, the claims of many putative class members "will be lost forever." This court understands that concern. However, a review of other actions wherein claimants attempted to certify classes similar to the one this court is presented with reveals that the proposed class, if indeed one does exist,[7] is overly broad.

Plaintiff asserts that all but a few members of the proposed class would be prevented from contesting the Secretary's recoupment because of the rules of administrative finality. While the actual number of individuals who have had their total benefits reduced pursuant to section 1320a–6 has not been identified, plaintiff assumes, probably reasonably so, that such a group does exist. This group would be composed of those who have been notified of or subjected to the recoupment but who have failed to take any further action. They have not challenged the action by filing a claim disputing the amounts recovered and thus the Secretary's decision to apply section 1320a–6 has become final as to them. This decision can be reopened only at the discretion of the Secretary. It is not subject to judicial review. 20 C.F.R. § 404.987 (1982); *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). However, even if the putative plaintiffs were to file requests for reconsideration at this time, and the requests were denied (being untimely), it would not be a sufficient basis upon which this court could premise jurisdiction. Congress consciously limited judicial review to the original decision denying benefits as a policy choice designed to forestall repetitive or belated litigation of stale eligibility claims. *Sanders,* 430 U.S. at 108, 97 S.Ct. at 985. This court must respect that policy decision.

This result is no different from one in which a claimant files an application for disability benefits, which is denied, and he then fails to pursue the matter. If it is later determined that the Secretary was in error, e.g., by applying the wrong legal standard, that would not give the claimant any right to the denied benefits if he had not taken any steps to preserve that right. Such is the situation here. Although plaintiff challenges the adequacy of the notice he and the putative class members received, it is markedly similar to that provided in original determinations of disability, and is equally sufficient. The notice informed putative class members that their benefits were being reduced, advised them to contact a social security office if they had any questions and set forth their rights and the applicable appellate procedures on the back of the form. The fact that a putative class member failed to act on that notice is regrettable. However, it is not judicially amendable.

In the present situation, plaintiff ultimately is challenging the amount of benefits to which he is entitled. Plaintiff does not in fact challenge the existing administrative review procedures. Plaintiff himself has filed for reconsideration, and intervenor Sanderson has obtained the relief he sought by pursuing his administrative remedies. Plaintiff is not in a situation similar to that presented in *Chagnon v. Schweiker,* No. 79–246 (D.Vt. Mar. 30, 1982), which addressed itself to delays involved in the payment of benefits. The amount of benefits due was not disputed; the time it took to pay them was in issue. In other words, plaintiff's claim is distinguishable from the one in *Chagnon* in that plaintiff has not yet demonstrated he is entitled to the monies he seeks. *Cf. Aldrich v. Schweiker,* 555 F.Supp. 1080 (D.Vt.1982). (Plaintiffs sought a determination that they were entitled to have their eligibility for disability benefits determined under specific standards, rather than a decision that they were entitled to benefits.)

With respect to the putative class, plaintiff seeks to represent those who failed to protect their rights by filing a claim with

---

7. We need not, and therefore do not, rule on the motion for class certification at this time. However, as it is intimately entwined with plaintiff Goulet's claims, we feel that some discussion of the problems posed would be enlightening.

respect to the reduction of their benefits with the Secretary. It is clear that such a claim is a "crucial prerequisite" to the Court's assumption of jurisdiction. *Mathews v. Eldridge,* 424 U.S. 319, 329, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). In other class actions brought under section 405(g), unnamed class members have been required to satisfy this nonwaivable requirement of the final decision rule. *See, e.g., Mathews v. Diaz,* 426 U.S. 67, 71–2 n. 3, 96 S.Ct. 1883, 1887 n. 3, 48 L.Ed.2d 478 (1976); *Jones v. Califano,* 576 F.2d 12, 18–21 (2d Cir.1978). Those who failed to do so were dismissed as being jurisdictionally deficient. Similarly, the present action is procedurally premature and consequently jurisdictionally deficient.

(b) *Mandamus Jurisdiction (28 U.S.C. § 1361)*

The second sentence of Title 42 U.S.C. § 405(h) reads: "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." In *Salfi,* 422 U.S. at 757–58, 95 S.Ct. at 2463, the Supreme Court interpreted this sentence as intended to assure that the procedures prescribed by section 405(g) were the exclusive means for reviewing decisions of the Secretary. This means that even determinations which are not final, such as initial denials of claims for benefits, may not be reviewed save pursuant to section 405(g) because they are still "decision[s] of the Secretary" within the meaning of section 405(h). *Salfi,* 422 U.S. at 759, n. 6, 95 S.Ct. at 2464, n. 6. The statute goes on specifically to preclude judicial jurisdiction of any action brought under section 1331 or section 1346 of Title 28. Whether or not this preclusion extends to prohibit the assumption of mandamus jurisdiction under section 1361 as well is a matter of great controversy and one of no little moment to plaintiff in the present action.[8]

Traditionally, a writ of mandamus will not issue unless the plaintiff has exhausted his administrative remedies and unless the defendant owes the plaintiff a clear duty to act. *See Kerr v. United States District Court for the Northern District of California,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (citing *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)). At the time the mandamus statute was enacted typical claims before the Secretary involved close factual questions reviewable only upon the substantial evidence standard. Essentially factual disputes are not amenable to the mandamus remedy, and therefore it is not likely that Congress envisioned mandamus could be utilized to interfere with the system of judicial review contained in sections 405(g) & (h). In recent years, however, more and more plaintiffs are raising issues which do not classify easily as claims "to recover on any claim arising under" Title II. 42 U.S.C. § 405(h); *see, e.g., Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *cf. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). These claims can be characterized as challenges to the constitutionality of the Act or of procedures adopted by the Secretary which seek broad declaratory and injunctive relief. These in turn raise the question of whether mandamus jurisdiction is available to hear such claims despite the fact that the claimants have not met the traditional requirements of section 405(g).

The Supreme Court has not expressly ruled on the question of whether section 405(h) precludes assertion of section 1361 jurisdiction over claims against the Secretary. Three cases have presented the question but have been decided by the court on other grounds, obviating the necessity of

---

8. When section 405(h) was originally enacted in 1939, it precluded jurisdiction of any suit brought under section 24 of the Judicial Code. Section 24 of the Judicial Code was later classified as section 41 of Title 28. At that time, section 41 encompassed all possible sources of federal court jurisdiction. However, the statutory language did not necessarily reach the Mandamus Act, because section 1361 of Title 28 was not enacted until 1962.

reaching the mandamus issue. *See Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A few lower courts, however, in a variety of factual settings, have reached the issue.

The most recent pronouncement by the Second Circuit Court of Appeals on the subject comes from Judge Friendly in *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981), in which he answered in part the question expressly left open by the Supreme Court in the three cases cited and held that section 405(h) does not preclude assertion of mandamus jurisdiction over claims essentially procedural in nature. Two earlier second circuit opinions had reached similar conclusions. *See Barnett v. Califano,* 580 F.2d 28 (2d Cir.1978); *White v. Mathews,* 559 F.2d 852 (2d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

After a thorough review of the relevant cases and authorities dealing with the jurisdictional question, Judge Friendly premised the assumption of jurisdiction in *Ellis* on a literal reading of section 405(h) and the Supreme Court's *Salfi* opinion. The judge determined that section 405(h) bars only claims which meet three requirements, namely: (1) actions which were against the United States, the Secretary, or any officer or employee thereof; (2) actions which were brought under section 1331 or section 1346 of Title 28; and (3) actions which sought to recover on a claim arising under Title II. 643 F.2d at 75. Because the claims asserted by the plaintiffs in *Ellis* did not fit the three part descriptive prohibition, Judge Friendly held they were not limited to review under section 405(g) specifications. He then went on to state that even if the ban articulated in section 405(h) was read as applying to actions brought under the mandamus statute, it would not defeat the claim in *Ellis* because it was a particularly strong procedural claim, one which was clearly not a claim for benefits under the statute. *Ellis,* 643 F.2d at 81.

The plaintiff Ellis had filed the action before her benefits were terminated and in fact they were continued without interruption. Ellis made no claim to entitlement at all, but rather challenged the due process sufficiency of a pretermination notice which did not contain a statement of reasons or a summary of evidence. Because of the nature of Ellis' claim, there was no possibility that an award of benefits could have been granted her in the lawsuit. *Id.* As the suit raised constitutional questions concerning procedures of the Secretary which operated prior to the time that any decision to either deny or approve a claim was made, it was not subject to the administrative procedures set forth in section 405(g) and the jurisdictional limitations of section § 405(h). In a footnote, however, Judge Friendly was careful to note that if the decision to send a pretermination notice were considered to be a denial of benefits sufficient to bring the review sought in the suit within the proscription of the second sentence of section 405(h), "our doubts expressed above concerning the existence of § 405(g) jurisdiction would have to be reconsidered." *Id.* at 82, n. 15. This, in turn, returns us to the Supreme Court's emphasis in *Salfi* that the procedures prescribed by section 405(g) were the exclusive means for reviewing *decisions* by the Secretary. 422 U.S. at 759 n. 6, 95 S.Ct. at 2464 n. 6. That is the crux of the matter: if the Secretary's interpretation and implementation of the effective date of the statute at issue in the present case, and the resulting offset and reduction in plaintiff's benefits is considered to be a *decision* of the Secretary, as that word is used in section 405(h) and in *Salfi,* then section 405(g) provides the only means for judicial review and mandamus jurisdiction is unavailable.

■ The conclusion that the availability of mandamus jurisdiction depends upon whether the issue before the court involves a decision of the Secretary with respect to claims and benefits under Title II, the characterization of a decision being the operative fact, is fully in accord with statements by the Supreme Court and holdings by other courts on the issue. As Justice Stewart

somewhat succinctly stated in his concurrence in *Califano v. Sanders,* 430 U.S. 99, 110, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977), in which The Chief Justice joined:

> Although the apparent literal meaning of statutory language is not an unfailing guide to the meaning of a congressional enactment, I can see no reason in this case why the second sentence of § 205(h) should not be read to mean exactly what it says—that the decision before us is reviewable under § 205(g) or not at all.

That this precludes even mandamus jurisdiction over a decision by the Secretary concerning benefits is stated even more clearly later in the same concurrence:

> The *Salfi* Court's treatment of the first two sentences of § 205(h) as requiring the exhaustion of administrative remedies, 422 U.S. at 757 [95 S.Ct. at 2461], is in no way inconsistent with a reading of the second sentence of § 205(h) as precluding review outside § 205(g). That sentence simply requires that all review take place within the confines of the procedural scheme established by § 205(g). Section 205(h) thus bars attempts to circumvent those procedures, whether by seeking review under § 205(g) without having fulfilled the exhaustion requirement, or by seeking review under *some other jurisdictional grant* that does not prescribe the administrative steps that must first be taken.

430 U.S. at 111, 97 S.Ct. at 987 (emphasis added).

The circuit cases which have assumed mandamus jurisdiction in similar matters have all involved procedural due process claims, and requests for declaratory and injunctive relief, rather than requesting the court to compel the payment of benefits. *See, e.g., Barnett v. Califano,* 580 F.2d 28 (unreasonable delays); *Elliott v. Weinberger,* 564 F.2d 1219, 1226 (9th Cir.1977) (dictum) (hearing requested prior to denial of recoupment); *White v. Mathews,* 559 F.2d 852 (unreasonable administrative delays); *Ryan v. Shea,* 525 F.2d 268, 272 (10th Cir. 1975) (notice and hearing prior to termination); *Frost v. Weinberger,* 515 F.2d 57 (2d

Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976) (evidentiary hearing before terminating benefits); *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir.1973) (evidentiary hearing prerequisite to termination of benefits); *Aldrich v. Schweiker,* 555 F.Supp. 1080, No. 80–279 (D.Vt. Apr. 14, 1982) (challenge to rules used in determining disability as being inconsonant with the definition of disability in the Act). Some of these courts have been emphatic in their assertions that any claims considered under mandamus jurisdiction must be collateral to the underlying dispute and must not affect a claim which should be ultimately subjected to the administrative process. *See, e.g., White,* 559 F.2d at 856. In other words, 42 U.S.C. § 405(g) is the exclusive avenue to the court for a claimant seeking to challenge the merits of actions taken pursuant to the Act. *See Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. at 986; *Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *White v. Mathews,* 559 F.2d at 856; *See also Barnett v. Califano,* 580 F.2d at 31; *Jones v. Califano,* 576 F.2d at 17; *see generally Association of American Medical Colleges v. Califano,* 569 F.2d 101 (D.C.Cir.1977); *RoAne v. Mathews,* 538 F.2d 852 (9th Cir.1976); *Frost v. Weinberger,* 515 F.2d at 62; *John Muir Memorial Hospital v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978); *Medical Center of Independence v. Califano,* 433 F.Supp. 837 (W.D. Mo.1977); *Morris v. Weinberger,* 401 F.Supp. 1071 (D.Md.1975).

As we have already noted, it is clear that, at least in this circuit, mandamus jurisdiction over the Secretary will lie to entertain certain *procedural* challenges. *Ellis,* 643 F.2d at 79. In order to avoid further confusion and to forestall any descent into tautological debate over what is a procedural claim and what is a substantive claim, we will attempt to illuminate the essence of the court's position in *Ellis.*

The Second Circuit Court of Appeals has distinguished between "procedural challenges" and "procedural claims" on the one hand and "claims to recover benefits" on the other. *Id.* at 79, 82. By identifying

some claimants actions as "procedural challenges" or "procedural claims" the court in *Ellis* meant "an attack on procedures of the Secretary ... which operate prior to the time that any decision to deny or to approve a claim is reached." *Id.* at 82 n. 15. Nothing in *Ellis* suggests that the availability of 28 U.S.C. § 1361 for judicial review of such "procedural challenges" or "procedural claims" would permit judicial review of what another court has recently described as the "large number of small individual claims seeking greater reimbursement," *Erika, Inc. v. United States,* 634 F.2d 580, 588 (Ct.Cl.1980). "The fair import" of the legislative history of the Medicare Act, Chief Judge Freedman noted in *Erika,* "is that Congress intended to bar judicial review of the amount of a particular benefit determination...." *Id.* That "fair import" is equally applicable to the legislative intent behind sections 405(g) and (h). *See Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). The question of judicial review of particular benefit determinations is distinct from procedural challenges and requests for declaratory or injunctive relief. The latter are appropriately entertained in the judicial forum; the former is left to the confines of section 405(g). The Secretary decided to reduce plaintiff's benefits. Plaintiff seeks to have the court order the payment of those benefits. This is precisely the kind of decision of the Secretary which is amenable to the administrative process.

Plaintiff contends that he has raised constitutional and procedural issues as well, however. Plaintiff seeks a declaratory judgment stating that defendants have wrongfully and illegally withheld payment of plaintiff's retroactive Title II benefits and that this wrongful withholding constitutes a due process violation because there was no prior hearing; a preliminary and permanent injunction enjoining defendants from withholding any portion of plaintiff's retroactive Title II payments; and an order compelling defendants to pay any retroactive benefits due plaintiff. In other words, constitutional and procedural issues have been asserted. However, a bare assertion is

not necessarily the naked truth. Plaintiff's underlying grievance concerns the reduction of his benefit payments pursuant to a decision of the Secretary. Although he asserts a due process violation, stating that he was not afforded an appropriate hearing prior to the reduction, this is not the case. The administrative review process does provide a hearing and plaintiff has in fact requested one. Plaintiff does not challenge the adequacy of the hearing procedures provided. At this hearing and upon review by the Appeals Council, if that occurs, the Secretary will have the opportunity to construe the statute in the first instance. This may obviate the necessity of reaching any constitutional questions, as it did in Sanderson's case. In assuming jurisdiction in *Ellis,* the court "perceiv[ed] no other obstacles to mandamus jurisdiction." 643 F.2d at 82. The present case, as indicated above, is not similarly free from such obstacles. Ultimately, the issuance of a writ of mandamus is in large part a matter of discretion of the court to which the petition is addressed. *Kerr v. United States District Court for the Northern District of California,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 112 n. 8, 85 S.Ct. 234, 239 n. 8, 13 L.Ed.2d 152 (1964); *Parr v. United States,* 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956)). This court declines to assume mandamus jurisdiction pursuant to Title 28 U.S.C. § 1361 at the present time. Consequently, defendant's motion to dismiss is granted.

### *Motion to Dismiss Claim Against Defendant Regan*

Defendant Donald T. Regan has been sued by plaintiff in his official capacity as Managing Trustee of the Federal Disability Insurance Trust Fund. Defendants claim that because the role of Regan with respect to the payment of disability claims is entirely ministerial, the plaintiff has failed to state a claim upon which relief can be granted. Plaintiff has not responded to this portion of defendant's motion. Plaintiff's original complaint requested this court

to assume mandamus jurisdiction over defendant Regan.

It is the duty of the Secretary of the Treasury, as Managing Trustee of the Federal Disability Insurance Trust Fund, to pay disability benefits to those persons certified by the Secretary of the Department of Health and Human Services (hereinafter "the Secretary") as eligible to receive them. 42 U.S.C. § 405(c). Payment is not a discretionary act by the Secretary of the Treasury. The statute states that once the Secretary certifies an individual as eligible for benefits, the Managing Trustee "shall make payment in accordance with the certification of the Secretary ...." 42 U.S.C. § 405(i). The Managing Trustee is not authorized to change the amount which is certified as payable, or to pay any amount without a certification.

 If plaintiff ultimately prevails in his claim, the Secretary will be directed to make the appropriate certification necessary for plaintiff to be paid any amount due and owing to him. Such an order, directed only to the Secretary, would satisfy all of plaintiff's claims. As plaintiff has provided nothing which indicates that defendant Regan would not honor such a certification by the Secretary in the future, or that Regan has failed to do so in the past, there is no showing that an order from this court would be necessary. Accordingly, there is no need for the court to assume mandamus jurisdiction over defendant Regan. The motion to dismiss as to defendant Regan is granted.

### Conclusion

In summary, plaintiff has failed to exhaust his administrative remedies at this time. The Court declines to waive this nonmandatory element of the exhaustion requirement because the favorable resolution of intervenor Sanderson's claims at the administrative level indicates that requiring exhaustion in Goulet's case would not, in fact, be futile. As it is presently entitled, this action is procedurally premature and consequently jurisdictionally deficient. In addition, the court declines to exercise mandamus jurisdiction. As elucidated above, plaintiff's attempt to challenge the merit of the Secretary's decision with respect to the amount of his particular benefits is better left to the administrative review process and procedural course charted out in the Social Security Act. Accordingly, defendant's motion to dismiss as to the entire action is granted.