Gerry TRAUTZ, Floyd Rhein, individually and on behalf of all others similarly situated, and Disability Advocates, Inc., Plaintiffs,

v.

Leon WEISMAN, Mollie Weisman, Eugene Weisman, Kones Paramananthan, Weisman's Rockland Manor—a Home for Adults, Weisman's Rest Hotel, Inc., Defendants.

No. 92 Civ. 0534 (GLG).

United States District Court, S.D. New York.

March 16, 1994.

Brody & Fabiani by Adam Simms, New York City, for defendants.

Disability Advocates, Inc. by Timothy A. Clune, Albany, NY, for plaintiff.

## OPINION

GOETTEL, District Judge.

Named plaintiffs Gerry Trautz and Floyd Rhein, former residents of defendant Weisman's Rockland Manor ("the Manor"), an adult care facility located in Spring Valley, New York, and Disability Advocates, Inc. ("DAI") brought this cause of action to challenge allegedly filthy, dangerous, and degrading conditions at the Manor. On behalf of themselves and as class representatives, Trautz and Rhein alleged claims under the Rehabilitation Act, 29 U.S.C. § 794, and the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961. They also alleged civil rights claims, pursuant to 42 U.S.C. §§ 1983 and 1985(3), and several state law claims.

In December of 1993, Trautz and Rhein brought this motion for class certification pursuant to F.R.Civ.P. 23(b)(1), (b)(2), and (b)(3). Defendants, Leon Weisman, Mollie Weisman, Eugene Weisman, Kones Paramananthan, the Manor, and Weisman's Rest Hotel (which owns the property leased to the Manor) opposed certification. After oral argument, we gave the plaintiffs sixty days in order to find additional class representatives. We have been informed that during that period, Mr. Rhein passed away, and plaintiffs were unable to find any new class representatives.

While it is unclear at this juncture whether Rhein's estate will be substituted as a plaintiff in this action, we can no longer consider him as a class representative because any claim he would have for injunctive relief is now moot. Further, even though Rhein has

been deposed and his estate would be entitled to collect from any damage award obtained by the class, his death·renders him incapable of satisfying the adequacy of representation requirements of Fed.R.Civ.P. 23(a)(4). Therefore, we consider only Trautz as class representative for purposes of this motion.

Because we have already set forth the facts of this case at some length in a published decision in which we denied defendants' motion to dismiss, *Trautz v. Weisman,* 819 F.Supp. 282 (1993),[1] we need not repeat them here.

Trautz seeks to represent a class composed of a) all residents who have lived at the Manor since January 23, 1986, who plaintiffs assert are entitled to compensatory, treble and punitive damages, and b) all present and future residents, who plaintiffs assert are entitled to injunctive relief.

## ANALYSIS

### A. Standing

As a threshold matter, defendants argue that plaintiffs' motion should be denied because Trautz and DAI lack standing to bring this suit. This argument appears overbroad, as to Trautz because although he is no longer a Manor resident, he certainly has standing to bring a claim for damages. More properly, defendants' argument speaks solely to the issue of whether DAI and Trautz have standing to bring a claim for injunctive relief, and we proceed to address these questions.

### 1. DAI

Plaintiffs assert that DAI's authorization to "pursue administrative, legal, and other appropriate remedies to ensure the protection of mentally ill individuals who are receiving care or treatment in the State" under the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10805(a)(1)(B) ("PAMII Act"), also confers standing to seek injunctive relief. DAI is one of six non-profit corporations which have contracted with the New York State Commission on Quality of Care for the Mentally

---

1. In that case, we denied defendants' motion to dismiss plaintiffs' RICO and § 1985(3) claims

after holding that individuals with disabilities may form a protected class under § 1985(3).

Disabled ("the Commission"). In return for DAI's services on behalf of individuals with mental illnesses in the Hudson Valley region, DAI receives a portion of the Commission's allotment of federal money under the PAMII Act.[2]

In *Rubenstein v. Benedictine Hosp.*, 790 F.Supp. 396, 409 (N.D.N.Y.1992), the district court for the Northern District of New York held that, "given the broad remedial purposes of [PAMII]" as well as its supporting statutory language, DAI had standing to pursue a civil rights suit. The defendants in the case had argued that DAI's role in the litigation was that of an advocate rather than a party and that it could not have independent standing because it had not personally suffered "injury in fact."

The district court disagreed. It looked to the PAMII Act which provides:

(a) A system established in a State ... to protect and advocate the rights of mentally ill shall—

(1) have the authority to—

\*       \*       \*       \*       \*       \*

(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illnesses who are receiving care or treatment in the State; and

(C) pursue administrative, legal, and other remedies on behalf of an individual who—

(i) was [an] individual with mental illness; and

(ii) is a resident of the State

42 U.S.C. § 10805. While the *Rubenstein* court found that PAMII's legislative history shed no light on the issue of standing, it found that the statute clearly conferred upon a system, here the Commission, the right to pursue legal remedies for the protection of mentally ill individuals.[3] *Id.*

We agree with this interpretation for, if Congress merely intended for state systems to act as advocates on behalf of mentally individuals, it would not have included (a)(1)(B) in the statute in addition to (a)(1)(C). The *Rubenstein* court further reasoned that the right to pursue legal remedies also flowed to the entities with which the Commission contracts, thus giving DAI standing.

Although the plaintiffs in *Rubenstein* sought both legal and injunctive relief, the decision contains no indication that the DAI, as plaintiff, sought injunctive relief. However, PAMII confers authority to "pursue administrative, legal, and other appropriate remedies." We think that injunctive relief clearly falls under the term "other appropriate remedies." Therefore we hold that the DAI has standing to sue for injunctive relief.

2. Trautz

a. *Applicable case law*

▇▇▇▇ We now consider whether Trautz has standing to sue for injunctive relief. In order to invoke Article III jurisdiction, a plaintiff must show that (1) he or she personally suffered actual or threatened injury resulting from a defendant's illegal conduct, (2) the injury can be traced to defendant's challenged action, and (3) it can be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by a continuing, present adverse effect." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Even where a case presents a live controversy at the time of filing, subsequent developments which extinguish the contro-

---

**2.** PAMII allows eligible systems to use their allotments to contract with State agencies or non-profits as long as the agency is independent of any agency providing treatment services and the agency or non-profit has the capacity to protect and advocate on behalf of persons with mental illnesses. *42 U.S.C. § 10804(a)(1).*

**3.** The *Rubenstein* court also relied upon *Goldstein v. Coughlin*, 83 F.R.D. 613 (W.D.N.Y.1979), a decision from the Western District of New York, in which the court held that Protection and Advocacy System for Developmental Disabilities, Inc. did not need to show injury to itself in order to bring suit under a similar statute protecting individuals with developmental disabilities.

versy will divest a federal court of jurisdiction and require that the case be dismissed as moot. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974).

However, the Supreme Court has recognized an exception to this general rule where the claim is "capable of repetition, but evading review," *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and where plaintiff can show a "reasonable expectation" that he or she will once again be subjected to the challenged conduct. *Honig v. Doe,* 484 U.S. 305, 320–21, 108 S.Ct. 592, 602, 98 L.Ed.2d 686 (1988). The Second Circuit has also recognized an exception where a defendant can purposefully moot a named representative's claim prior to class certification. *White v. Mathews,* 559 F.2d 852, 857 (2d Cir.1977), *cert. denied sub nom., Califano v. White,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

### b. *Application*

■ This case commenced on January 23, 1992, and Trautz left the Manor in July 1990. Defendants argue the general rule that a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time of filing and the time of certification and that none of the recognized exceptions to the rule apply. *Swan v. Stoneman,* 635 F.2d 97, 102, n. 6 (2d Cir. 1980).

■ We agree with defendants that Trautz's claim is distinguishable from claims involving issues capable of repetition but evading review. Such instances arise where a plaintiff or class representative has standing when he or she files suit but his or her individual case becomes moot prior to the conclusion of the case because the plaintiff or representative's standing turns on a status which is temporary. *Sosna,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (challenge to a one-year residency requirement for eligibility to file a divorce petition in Iowa). *See also Gerstein v. Pugh,* 420 U.S. 103, 110, n. 11, 95 S.Ct. 854, 861, n. 11, 43 L.Ed.2d 54 (1975) (challenge to pretrial detention of individuals arrested without warrants and charged by information). By contrast, Trautz never had standing to sue for injunctive relief from the first day this case was filed. Similarly, this case is also distinguishable from those in which defendants seek to avoid challenge to their policies by strategically granting relief to successive named plaintiffs who had standing when their cases were filed, thus mooting their individual claims. *See Jones v. Califano,* 576 F.2d 12, 22 (2d Cir.1978); *White v. Mathews,* 559 F.2d at 857.

Trautz attempts to side-step the fact that he did not have a live controversy when this suit was filed by claiming there is a substantial likelihood that he may find himself back in the Manor. He claims that *Honig v. Doe* supports his position.

*Honig* involved a challenge brought by emotionally disturbed students who were indefinitely suspended for disruptive conduct relating to their disabilities pending the completion of expulsion proceedings. The respondents alleged this procedure violated the "stay put" procedures of the Education of the Handicapped Act, 20 U.S.C. § 1415(e)(3) ("EHA"), which require that a disabled child shall remain in his or her educational placement pending completion of any review proceedings. The district court permanently enjoined the school district from taking any action other than a 2– or 5–day suspension against any disabled child for disability-related conduct and barred any changes in educational placement for such children prior to completion of EHA proceedings and parental consent. The school district appealed arguing, *inter alia,* that the case was moot.

The Supreme Court held that one of the respondents, Jack Smith, was entitled to injunctive relief despite the fact that he was receiving home school instruction at the time of Supreme Court review and was not facing any threat of expulsion.[4] Basing its decision

---

4. The Student Placement Committee ("SPC") originally sent a letter to Smith's grandparents informing them that they were recommending that Smith be expelled and that a temporary suspension be continued until the case was re-

solved. After Smith's counsel intervened, the SPC cancelled Smith's hearing and offered to either send Smith to a half-day program or provide him with home tutoring. It refused to allow the option of return to his full-day program, and

on Smith's continued eligibility for an education under the EHA, the Supreme Court held that there was a reasonable expectation "that Smith would once again be subjected to a unilateral 'change in placement' for conduct growing out of his disabilities were it not for the statewide injunctive relief [issued by the district court]." *Id.* 484 U.S. at 320, 108 S.Ct. at 602. Although the Court noted its general unwillingness to assume that a party seeking relief will repeat the same misconduct which placed him or her at risk of injury, it distinguished *Honig* in that it was the plaintiff's very failure to conform to socially accepted conduct which rendered him handicapped under the EHA. *Id.*

Trautz claims that he is entitled to injunctive relief because there is a substantial likelihood that he will be subjected to the alleged illegal actions of the defendants. He asserts whether or not he is returned to the Manor is effectively out of his control. Trautz stated in his deposition that he was forced to return to the Manor in November of 1989 after a seven year absence because his social worker was unable to obtain another placement due to a Social Security overpayment which left him owing money to the government.[5]

At oral argument, the parties explained that, for the most part, Manor residents are newly released patients from mental hospitals or homeless persons with substance abuse problems. Plaintiff's attorney conceded that while placement was "voluntary" in the sense that residents were allowed to leave the Manor, as a practical reality, there is often no other place for them to go.

While it may be that Trautz's options are so limited that he could be forced to return to the Manor in the future, we do not think that he has succeeded in establishing standing in this case. Although plaintiffs may be correct that it is just as likely that Trautz will end up back at the Manor as it was that Smith, the plaintiff in *Honig*, would return to public school, misbehave, and be subjected to a unilateral change in his placement, there is one crucial difference between the cases. When Smith intervened in *Honig v. Doe*, he was entitled to injunctive relief. While his grandparents agreed to home tutoring, they did so because Smith was not allowed to return to his full-day program. *Honig v. Maher*, 793 F.2d 1470, 1478 (9th Cir.1986), *aff'd sub nom., Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Thus, he was still suffering from "a continuing, present adverse effect" from the Student Placement Committee's alleged illegal actions when the case was filed, although by the time his case reached oral argument before the Supreme Court, his counsel could no longer state that Smith would seek to re-enter the state school system. *Id.*, at 318, n. 6, 108 S.Ct. at 602, n. 6.

In this instance, Trautz was not at the Manor when this suit was brought, nor was he suffering from the continued adverse effect of the defendant's alleged illegal actions so that he would have been entitled to injunctive relief. The likelihood that Trautz may again be subjected to defendants' alleged improper treatment does not cure the fact that he did not have standing to sue for injunctive relief when this suit was originally

Smith's grandparents chose home tutoring. *Doe v. Maher*, 793 F.2d 1470, 1478 (9th Cir.1986), *aff'd sub nom., Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Prior to Supreme Court review, Smith left the school district. *Honig*, 484 U.S. at 318, 108 S.Ct. at 601.

5. The deposition testimony then proceeded as follows:

Q When they suggested you might return to Weisman's Rockland Manor in or around November 1989, did you voice any objection to being placed there?
A Yes.
Q Who did you voice that objection to?
A My case manager, my parents and my therapist.

Q Nonetheless, in spite of those objections, ultimately you agreed to go back to Weisman's Rockland Manor around November 1989?
A I didn't have much choice. I had to leave the hospital. I was well.
Q Well, you mentioned that you voiced objections to your parents for example, did you ask your parents if you could return to their home in November of 1989, given your prior experiences at Weisman's Rockland Manor?
A I was too old to live with my parents and, you know, I wanted to be on my own as much as I could and get better and I felt living with my mother and father would create a dependency on them which I didn't need.

brought.[6] *Cf. Walker v. Haynes*, 659 F.2d 46 (5th Cir.1981) (holding that named plaintiffs challenging conditions in a Louisiana jail did not have standing as to a claim for injunctive relief included in the Amended Complaint when the Amended Complaint had been filed after they had been transferred to other facilities).

While we find that DAI does have standing to sue for injunctive relief, we find that Trautz does not. Because only Trautz remains as named plaintiff for the putative class, we must deny plaintiffs' motion for class certification as to their claim for injunctive relief. Because it has become apparent that we lack jurisdiction to grant injunctive relief to the proposed class, we have no choice but to dismiss the class claim pursuant to Fed.R.Civ.P. 12(h)(3).[7]

**B. Prerequisites to Class Action**

■ We now move on to consider plaintiffs' motion for class certification as to their damage claims. There are four prerequisites to a class action. They are that (1) the class is so numerous that joinder would be impractical, (2) there are common questions of law or fact to the class, (3) the claims or defenses of the representatives are typical of those of the class and (4) the representative parties will fairly and adequately represent the class. F.R.Civ.P. 23(a). In addition, in order to be maintainable, the action must satisfy subparagraph (1), (2) or (3) of Rule 23(b).

Plaintiffs seek certification of a damage class composed of all residents who have lived at the Manor since January 23, 1986. January 23, 1986 appears to have been chosen by plaintiffs' counsel because Rhein began his residence at the Manor in 1986.[8] However, after a seven year absence, Trautz only lived at the Manor from November 1, 1989 through July 16, 1990. Due to Rhein's death, we only consider whether certification would be appropriate for a damage class composed of all residents from November 1, 1989 through July 16, 1990.

**1. Numerosity and Commonality**

■ In order to satisfy Rule 23(a)(1)'s numerosity requirement, plaintiffs need not establish any particular class size, but must be able to show that the class is so numerous that joinder is impractical. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Plaintiffs claim that, as of October 1993, approximately 350 people have lived in the Manor which is a sufficient number to satisfy the numerosity requirement. While imposing a more restrictive date limitation upon the class will, undoubtedly shrink its size, we still think the number of residents will be substantial. Plaintiffs also claim that patient fear of reprisal makes individual joinder impracticable and that judicial economy would be best served by certifying a class rather than encouraging individual suits. For purposes of this motion, defendants concede that plaintiffs have satisfied the numerosity requirements. Therefore, we proceed to the issue of commonality.

**2. Commonality**

■ In order to satisfy Rule 23(a)(2)'s commonality requirement, plaintiffs need to establish that there are common questions of law and fact to the class. *Copeland v. Perales*, 141 F.R.D. 11, 15 (E.D.N.Y.1992). Plaintiffs have set forth a lengthy list of common issues of law and fact. Defendants do not offer any argument as to why the commonality requirement is not satisfied. Instead, they note that considerations of

---

**6.** We note that plaintiff's attorney may have had difficulty finding a current resident of the Manor to act as a named plaintiff due to the high degree of control that the defendants exercise over the daily living conditions of Manor residents which presents a substantial opportunity for retaliation. If plaintiffs' allegations are true, we sympathize with them however, absent the intervention of an individual with standing to bring a claim seeking injunctive relief, we cannot certify a class for injunctive relief.

**7.** We note that, should DAI prevail in its suit for injunctive relief, the practical effect may be indistinguishable from that of a successful class action for injunctive relief.

**8.** While Trautz lived at the Manor from August 1982 through November of 1982, we assume that plaintiffs do not seek to certify a class for that time period because the applicable statutes of limitation would bar suit.

commonality and typicality "tend to merge." Thus, we move on to consider typicality.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." It is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992).

Plaintiffs claim this requirement is satisfied because each class member's claim arises out of the manner in which the home was operated on a day-to-day basis. Plaintiffs cite *Johns v. Rozet,* 141 F.R.D. 211 (D.D.C.1992), in support of their position. In *Johns,* the district court certified a class composed of the tenants of Tyler House, a low-income housing project, who sought redress from their landlords and their management company for alleged sub-standard and unhabitable conditions. The court held that the typicality requirement was satisfied because the named representatives were residents of Tyler House, when the motion for certification was granted and because their claims arose from the same conditions in common areas and were premised on the same breach of warranty of habitability and negligence theories. *Id.* at 216.

While the putative class seeking certification in this case has also alleged civil rights and RICO claims, we think that *Johns* is applicable here. As in *Johns,* the facts giving rise to the class claims are the same ones which gave rise to Trautz's claims, namely, the condition of the common areas, the adequacy of Manor meals, the timeliness of the distribution of residents' personal needs allowances, etc. While the RICO and the civil rights claims make this case more complex then *Johns,* the legal issues they raise, such as whether or not the defendants acted under color of state law, whether the defendants engaged in a pattern of racketeering activity, whether the defendants engaged in mail or wire fraud in furtherance of a scheme to defraud the class, whether the Manor constitutes a program which receives federal financial assistance for purposes of § 504 of the Rehabilitation Act, etc., are the same for both Trautz and the class.

Defendants assert that the typicality requirement is not satisfied because of the disparity in injury between each of the class members and the class representative. While the extent of damages may vary between class members (due, at least in part, to the different lengths of time they spent at the facility), plaintiffs claim differences among class members regarding damages are an insufficient basis to defeat class certification. *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 56 (S.D.N.Y. 1993).

Defendants contend that this case is distinguishable from *Maywalt,* a securities class action, because the damage calculations involved here will be more onerous. Specifically, they contend that the court will be forced to make an individual determination of damages based upon such factors as the length of stay, whether the harm inflicted upon an individual gave rise to a constitutional tort, and the degree of mental anguish suffered. While the damage calculation may prove to be difficult, we do not think it sufficient reason to deny plaintiffs' motion for class certification since we retain the power to modify the class, by dividing it into subclasses or certifying it only as to certain issues or claims. Fed.R.Civ.P. 23(c)(1) and (4).

### 4. Representativeness

Finally, Rule 23(a)(4) requires a two-tiered inquiry to establish that the class representatives will fairly and adequately protect the interests of the class. *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 201 (S.D.N.Y.1992). Defendants bear the burden of proving that representation will be inadequate. *Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 136 (W.D.Pa.1993).

The first part of the analysis is whether or not counsel is qualified, experienced and generally able to conduct the litigation. *In re Drexel,* 960 F.2d at 291. Defendants concede that the attorneys at Disability Advocates Inc. who are handling this case are sufficient-

ly qualified and experienced to represent the class. Therefore, we move on to the second part of the analysis.

■ The second part of the analysis focuses on whether the class members and the named plaintiff have interests which are not antagonistic to one another. *Id.* at 291. This requirement also appears to be met. However, defendants assert that Rule 23(a) also requires that the representative plaintiff be familiar with the facts and legal theories contained in the complaint so that the he is not merely "lending [his] name to a suit controlled entirely by the class attorney." Defendants assert that Trautz's deposition testimony "revealed an astonishing lack of familiarity with the basics of this litigation." Specifically, they assert that Trautz was unable to articulate his role as class representatives nor an understanding of the RICO statute.[9]

■ However, we do not think that an inability on the part of a class representative to explain the civil RICO statute (something which many attorneys cannot do) disqualifies him or her as a class representative. Indeed, in complex actions, plaintiffs are not required to be legal experts and "a great deal of reliance on counsel is to be expected." *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1416 (E.D.N.Y.1989). In the context of such actions, inquiry into the adequacy of the class representatives is rarely appropriate. *Id.*

## C. Certification Under Rule 23(b)

Plaintiffs argue that class certification is proper under Rule 23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3). Defendants contend that it is not.

### 1. Rule 23(b)(1)

A class action is maintainable where the prosecution of separate actions by individual class members creates a risk of (1) "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," F.R.Civ.P. 23(b)(1)(A), or (2) "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." F.R.Civ.P. 23(b)(1)(B).

#### a. *23(b)(1)(A)*

Class certification under Rule 23(b)(1)(A) is only proper where a class representative "seeks injunctive relief to alter an on-going course of conduct which is either legal or illegal as to all members of the class." *Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D.Conn. 1982). Because we have dismissed the class claim for injunctive relief, certification under (b)(1)(A) would be improper.

#### b. *23(b)(1)(B)*

■ While plaintiffs argue that a class action is maintainable for their damage claims under Rule 23(b)(3), they assert, because certain class members may opt-out under (b)(3)'s opt out provisions, a class should be certified as to their punitive damage claims under (b)(1)(B). Plaintiffs argue that such a class is warranted because there is a "limited fund" for punitive damages.

---

9. When asked to state his role as plaintiff in this lawsuit, Trautz replied:

> [m]y intention is to help people at Weisman, so it won't be as miserable for them, as it was for me. I feel nobody should live that way, the way the hotel was, and I am trying to help my fellow consumers of Rockland County.

When asked what his understanding of the RICO statute was Trautz stated, "[l]egalese, but it's racketeering of some kind, like cheating people out of money, hurting people and not helping people." When asked his understanding of the racketeering activity contained in the complaint, he stated:

> My understanding—I might be wrong, you know. I think it's money being paid for rent that's going to the wrong place. I mean, I live in a community residence and the amount of money received [by] my residence and Weisman is the same and there are over a hundred people, as far as I understand, at Weisman's and all this money is being funnelled in and since this suit was filed there have been changes, but it seems like not much. The rent money wasn't going into that adult home. I had written a letter to the Journal News in Rockland talking about this and I was on a panel sponsored by the commissioner on the quality of care and I talked about this at the panel hearing at Pomona and it's not right.

The paradigm Rule 23(b)(1)(B) case is one in which there are multiple claimants to a limited fund ... and there is a risk that if litigants are allowed to proceed on an individual basis those who sue first will deplete the fund and leave nothing for latecomers. *In re "Agent Orange" Product Liability Litigation,* 100 F.R.D. 718, 725 (E.D.N.Y.1983), *quoting* A. Miller, An Overview of Federal Class Actions: Past, Present and Future 45 (1977).

In order to establish a class action based on a "limited fund," plaintiffs must provide more substantiation beyond a large ad damnum clause. In the *Agent Orange* litigation, Judge Weinstein held that plaintiffs needed to establish a "substantial probability" that upon the award of damages, absent certification, the claims of earlier litigants would exhaust the defendants' assets.

While the need to certify such a class may arise at a future date, at this juncture, plaintiffs have not established a substantial probability that class certification under (b)(1)(B) is proper due to a limited fund. We note that at this point there is no evidence suggesting that class members will opt out or that punitive damages will be awarded. *See Langley v. Couglin,* 715 F.Supp. 522 (S.D.N.Y.1989). In addition, no evidence has been submitted to establish the amount of funds defendants will have at their disposal should plaintiffs prevail. Therefore, we deny plaintiffs motion to certify a punitive damage class pursuant to Rule 23(b)(1)(B) with leave to renew.

### 2. Rule 23(b)(2)

A class action is also maintainable where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." F.R.Civ.P. 23(b)(2). Again, because we have dismissed the class claim for injunctive relief, (b)(2) is inapplicable.

### 3. Rule 23(b)(3)

Finally, plaintiffs argue that a class action is maintainable under Rule 23(b)(3). In order to certify a class under 23(b)(3), the court must find (1) that the common questions of law and fact predominate over any questions affecting only individual members and (2) that a class action is far superior to other available methods for fair and efficient adjudication of the controversy. In addition, classes certified under (b)(3) are subject to the notice provisions of Rule 23(c)(2).

Plaintiffs assert that, given the inherent inequality between the class members and defendants, a class action would be the best way to resolve this controversy. In addition, they argue common issues of fact pertaining to defendants' unlawful operation of the Manor predominate. We agree that a class action may be the most fair and efficient way to resolve the individual claims of class members and that common class issues predominate this litigation. To the extent that individual determinations and fact findings become necessary, we reiterate that we retain the power to modify the class and will do so upon the proper showing.

Defendants argue that providing notice to former residents will be extremely difficult and that it is likely that class members will not understand the notice requirement nor their right to opt out. While we agree that tracking down class members may prove to be an onerous task, we do not think that the difficulty alone is sufficient reason to deny class certification. At this juncture, we do not have sufficient information about the individuals who will compose the class (nor do we have any proposed notice form) so as to determine whether or not the class members will understand their options. As such, we cannot address defendants concern that class members, who wish to opt-out may fail to do so, and defendants are free to bring this objection up again when the court considers what will be required in order to provide proper class notification.

In summary, we find that DAI has standing to sue for injunctive relief, but that class representative Trautz does not. Thus, we deny plaintiff's motion for class certification and dismiss the class claims for injunctive relief. However, we grant plaintiff's motion for class certification as to its damage claims, but the damage class shall be limited to

individuals who resided at the Manor during the period of November 1, 1989 through June 16, 1990.

SO ORDERED.