Nicholas J. **ROMANO**, et al., Plaintiff,

v.

**SLS RESIDENTIAL INC.,
et al., Defendants.**

No. 07 Civ.2034(SCR).

United States District Court,
S.D. New York.

Oct. 10, 2007.

438

Michael Sussman, Goshen, NY, for Plaintiff.

James F. Segroves, Malcolm J. Harkins, III, Margaret Joann Babb, Proskauer Rose LLP, Washington, DC, Marc Robert Wilner, Paul F. Callan, Callan, Koster, Brady & Brennan LLP, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge.

Plaintiffs Nicholas J. Romano and Deborah Morgan bring this suit alleging claims under the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and various state law claims. Currently before this court are defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), defendants' motion for a stay, and plaintiffs' motion for class certification. For the reasons below, defendants' motion to dismiss is granted in part, defendants' motion for a stay is denied, and plaintiffs' motion for class certification is granted.

## I. Factual Background

Defendant SLS[1] is a treatment facility providing services to persons with psychiatric disorders. Plaintiffs were patients at SLS. Defendants Joseph Santaro and Alfred Bergman are the owners of SLS. Defendant Shawn Prichard is a licensed psychologist and was SLS's Chief Clinical Officer. The other individual defendants—Matt Sena, Robert Giordano Robert Deletis and John Doe—are employees of SLS.

The complaint alleges that defendants Santaro, Bergman, and Prichard fraudulently held themselves out as experts in the care of the mentally ill. The complaint also alleges that rather than maintaining a program with a focus on rehabilitation, defendants engaged in a pattern of behavior whereby they illegally assaulted, restrained, punished and isolated patients, including the named plaintiffs.

The complaint alleges that the New York State Office of Mental Health ("OMH") has already found that defendants did not focus on rehabilitation and did not work to integrate plaintiffs and other class members into the community. Among other things, the complaint alleges that: 1) SLS policies and procedures did not have a rehabilitative and recovery focus, nor did they foster daily living skills and skills development; 2) patients were denied the right to make phone calls or have visitors, including the right to communicate with their own parents during their first two weeks at the facility and that phone calls by patients were routinely supervised and staff members routinely opened mail and packages sent to patients; 3) some patients were subjected to routine nightly searches of their bedrooms and bodies, and were prevented from leaving their bedroom at night; 4) SLS denied patients the right refuse treatment, to leave treatment, and refused patients the right to leave the facility; 5) SLS illegally employed manual restraints, and forcibly put patients in isolation rooms where they were physically assaulted and emotionally abused, including forcible medication; 6) patients were sometimes punished by being put in an "APD" group, in which they were denied access to phones, TV, and family and were forced to wear prison-like attire; 7) other patients where then told to treat these patients as though they were invisible; 8) family were required to give 24–48 hours notice to visit patients and needed prior approval; 9) patients were subject to constant video surveillance, except in the REC room where they were subject to physical and emotional abuse.

The complaint also alleges that psychiatrists at SLS were pressured to file false applications under Kendra's law to force treatment on patients who wished to leave.

---

1. "SLS includes several corporate defendants—SLS Residential, SLS Health and SLS Well-ness—doing business in Putnam County."

Finally, the complaint alleges numerous false statements in SLS's advertising related their success rates and the goals of the program.

## II. Motion to Dismiss

### A. Rules 12(b)(1) and 12(b)(6) Standards

In evaluating a motion to dismiss under Rule 12(b)(6), a court "must view all allegations raised in the complaint in the light most favorable to the non-moving party . . . and 'must accept as true all factual allegations in the complaint.'" *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir.1996) (quoting *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)) (citation omitted). In doing so, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Because the complaint must allege facts which confer a cognizable right of action, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *York v. Ass'n of the Bar*, 286 F.3d 122, 125 (2d Cir.2002) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Similarly, in deciding a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all factual allegations as true. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir.2003). Plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. *Id.*

### B. ADA Claim

 "Title III of the ADA proscribes discrimination against the disabled in public accommodations." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.2004). "A private individual may only obtain injunctive relief for violations of a right ·granted under Title III; he cannot recover damages." *Id.* at 86. Defendants move to dismiss plaintiffs' ADA claim, as well as their request for other injunctive relief, on the grounds that plaintiffs lack standing to seek injunctive relief. This Court agrees.

 In order to establish standing, "first, the plaintiff must establish that he suffered an injury in fact, which is defined as an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. Finally, a plaintiff must show that it is likely that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted); *Schroedel v. New York Univ. Medical Ctr.*, 885 F.Supp. 594, 598 (S.D.N.Y.1995).

 "In order to establish an injury in fact necessary to a claim for injunctive relief, the moving party must demonstrate that a defendant's conduct is causing irreparable harm. This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." *Schroedel*, 885 F.Supp. at 598. (citations omitted). "While past wrongs consist of evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (internal citations omitted).

In *Schroedel*, Judge Kram held that plaintiff, a deaf woman seeking an injunction for a hospital emergency room to provide accommodations to her, did not have standing to seek injunctive relief because the threat of her injury was speculative. The Court noted that the plaintiff did not reside near the hospital, only once previously had used the services of the hospital, and had not alleged that she intended to use the services of the hospital again. Thus any injury to her was speculative.

Here, plaintiffs were no longer patients at the facility at the time that they filed their complaint. In addition, plaintiffs reside in New Jersey, while the facility in question is in Putnam County. Moreover, plaintiffs have not alleged that they intend to use the facility again, or that they would be likely to

use the facility but for the alleged wrongful conduct. *See also Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,* No. 01 Civ. 5518, 2003 WL 1751785, *8–9, 2003 U.S. Dist. LEXIS 5145, *28 (S.D.N.Y. April 1, 2003) (distinguishing *Schroedel* on the grounds that plaintiff alleged that they would return to the defendant's facility but for the lack of accommodation). Any injury plaintiffs allege, therefore, is speculative.

Plaintiffs argue that a ruling the plaintiffs lack standing would allow defendants to expel a plaintiff from their facility thereby mooting their claim and eliminating standing. This argument fails. In such a case, the question before the Court is the mootness of plaintiffs' claims, not standing, and the question before the court would be whether the harm alleged is capable of repetition yet evading review. *See Trautz v. Weisman,* 846 F.Supp. 1160, 1164 (S.D.N.Y.1994). In this case, plaintiffs do not have standing to seek an injunction in the first instance because any potential harm to them is entirely speculative. *See id.*

Accordingly, plaintiffs lack standing to seek injunctive relief, and any claims for injunctive relief are dismissed. In addition, because only injunctive relief is available for plaintiffs' Title III ADA claims, these claims are dismissed.

## C. Rehabilitation Act

■ Defendants move to dismiss plaintiffs' damages claims under the Rehabilitation Act. Defendants' motion is granted.

■ To state a claim under § 504 of the Rehabilitation Act, "a plaintiff must show that: 1) he or she has a disability for purposes of the Rehabilitation Act; 2) he or she was 'otherwise qualified' for the benefit he or she had been denied; 3) he or she has been denied the benefits 'solely by reason' of his or her disability; and 4) the benefit is part of a 'program or activity receiving Federal financial assistance.'" *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1231 (S.D.N.Y. 2003).

■ Defendants argue that plaintiffs fail to state a claim under the Rehabilitation Act because they cannot allege that they were denied a service that they were "otherwise qualified" for. "[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." *Cushing v. Moore,* 970 F.2d 1103, 1109 (2d Cir.1992); *see also United States v. University Hosp.,* 729 F.2d 144, 156 (2d Cir.1984). In *Cushing,* the Second Circuit held that methadone addicts did not state a claim under the Rehabilitation Act for denial of methadone by a methadone clinic because, "[i]t is difficult to envision a drug addict receiving methadone treatment in spite of his drug addiction, because it is his drug addiction that brings him to participate in the methadone program in the first place." Thus, the Circuit held that plaintiffs could not state claim because, "the [Rehabilitation Act] does not create a cause of action based on a handicap that is directly related to providing the very services at issue." Similarly, the "otherwise qualified" requirement of the Rehabilitation Act would limit its applicability in this situation because the psychiatric services are the very services which brought plaintiffs to the SLS. Accordingly, plaintiffs cannot state a claim under the Rehabilitation Act.[2] *See also Grzan v. Charter Hosp.,* 104 F.3d 116, 123 (7th Cir.1997) ("[S]ection 504 does not provide a federal malpractice tort remedy.")

## D. New York Executive Law § 296

■ Defendants' motion to dismiss plaintiffs' claims under New York Executive Law § 296 is denied.

■ Plaintiffs' New York Executive Law § 296 claims are governed by the same legal standard as the ADA. *Rodal v. Anesthesia Group of Onondaga, P.C.,* 369 F.3d 113, 117 n. 1 (2d Cir.2004). Thus, to state a claim under § 296, a plaintiff must allege that (1) he has a disability, (2) that a person who owns, leases (or leases to), or operates a

---

**2.** Additionally, although moot given this Court's ruling dismissing plaintiff's claims under the Rehabilitation Act, the Court notes that plaintiffs' claims for injunctive relief under the Rehabilitation Act are dismissed because plaintiffs lack standing to seek injunctive relief.

place of public accommodation discriminated against him, (3) on the basis of his disability. *See Detko v. Blimpies Restaurant,* 924 F.Supp. 555, 557 (S.D.N.Y.1996).

Defendants do not dispute, for the purposes of this motion, that plaintiffs are disabled. Nor do they dispute that they operate a place of public accommodation. Furthermore, plaintiffs allege in their complaint, and this Court accepts as true for the purposes of this motion, that defendants engaged in the conduct on the basis of plaintiffs' disabilities—i.e. they targeted disabled persons.

The sole dispute between the parties is whether defendants' conduct amounts to "discrimination". Defendants contend that there is no discrimination because plaintiffs have not alleged a similarly situated group of persons, who are not disabled, who were *treated differently than plaintiffs.* To paraphrase defense counsel, the allegation is that all persons were treated badly.

Plaintiffs' novel theory is that that they were discriminated against because they were targeted, mistreated, and profited off of, because of their vulnerability as disabled persons. Plaintiffs argue that such intentional targeting is cognizable discrimination within the meaning of the ADA and § 296 because these statutes were intended to protect these vulnerable populations. Plaintiffs' and defendants' counsel were unable to point to a single case in which this theory of discrimination under the ADA or § 296 was either accepted or rejected by a court. Nor was this court able to find such a case.

██ This Court is willing to allow the application of the ADA and Executive Law § 296 in this circumstance. The ADA and Executive Law § 296 were intended to protect disabled persons, and this Court holds that where an entity targets a protected class for mistreatment because of its protected status (in this case, targets disabled persons *because* of their disability), such conduct constitutes discrimination. To do otherwise would simply allow a party to limit its services to the disabled, injure them and escape liability under the discrimination statutes.

Indeed, this Court finds parallels in this case to a recent decision by Chief Judge Dearie in the Eastern District New York, in which Judge Dearie held that targeting minorities and only minorities for sales on unfair terms constitutes discrimination under the Fair Housing Act. *See Barkley v. Olympia Mortgage Co.,* 2007 WL 2437810, *12–15, 2007 U.S. Dist. LEXIS 61940, *42–47 (E.D.N.Y. August 22, 2007). In *Barkley,* Judge Dearie held that where a plaintiff presents evidence of "intentional targeting" with respect to predatory lending, he or she need not also show more favorable treatment to other non-protected persons. *Id.* at *13–14, 2007 U.S. Dist. LEXIS 61940, *44. To hold otherwise, Judge Dearie noted, would allow predatory lending schemes to continue as long as they are exclusively perpetrated upon one racial group. *Id.* at *14, 2007 U.S. Dist. LEXIS 61940, *45. Similarly, in this case, this Court holds that plaintiffs have stated a claim under Executive Law § 296 because to hold otherwise would allow defendants who wished to discriminate against persons with disabilities to avoid liability under discrimination statutes as long as they only targeted persons with disabilities, rather than also providing some good, service, or accommodation to those who could otherwise avail themselves of the Defendants' services except for the fact that they were without disabilities. Accordingly, this Court holds that plaintiffs have stated a claim for discrimination under New York Executive Law § 296.

### E. Intentional and Negligent Infliction of Emotional Distress

██ Defendants move to dismiss plaintiffs' state law claims for intentional and negligent infliction of emotional distress on the grounds that the conduct here is not sufficiently outrageous. This Court disagrees.

██ Claims for both intentional and negligent infliction of emotional distress require an allegation of "extreme and outrageous conduct" which is to be regarded as "atrocious and intolerable in a civilized society." [3] *See Estevez–Yalcin v. The Children's*

---

**3.** "Under New York law, a claim of intentional infliction of emotional distress ('IIED') requires

*Village,* No. 01 Civ. 8784, 2006 WL 1643274, *12, 2006 U.S. Dist. LEXIS 39029, *41 (S.D.N.Y. June 13, 2006).

 Defendants sole argument with regards to these claims is that the conduct here is not "extreme and outrageous" because it amounts to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Defendants also cite to a single Massachusetts case in which the district court found that, under Massachusetts law, plaintiff failed to state allege extreme and outrageous conduct where the plaintiff, a psychiatric patient, alleged forcible medication and isolation. These arguments are without merit. Plaintiffs are alleging repeated acts of physical abuse, not mere insults and indignities. The Massachusetts case did not involve any allegations of physical abuse. Indeed, physical abuse is the hallmark of extreme and outrageous conduct. *See D'Angelo–Fenton v. Town of Carmel Police Dep't,* 470 F.Supp.2d 387, 400 (S.D.N.Y.2007) ("Although physical injury is no longer a necessary component of a cause of action to recover damages for the negligent infliction of emotional distress ... [t]he circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety."). Given that, among other things, plaintiffs have alleged repeated instances of physical abuse by defendants, defendants' motion to dismiss plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress is denied.

allegations of '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Payne v. Mount Hope Hous. Co.,* No. 04 Civ. 2897, 2007 WL 900034, *4, 2007 U.S. Dist. LEXIS 20983, *12 (S.D.N.Y. March 25, 2007). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

## F. Negligent Hiring, Retention, and Supervision

 Defendants move to dismiss the negligent hiring, retention and supervision claims against defendants Sena, Giordono, Caputo, Deletis, and Doe—labeled "negligent administration" in the complaint—on the grounds that they are mere employees. Defendants' motion is granted.

 "A cause of action for negligent hiring ... is based upon the defendant's status as an employer. Such a claim requires the employer to answer for a tort committed by an employee against a third person when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm". *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.,* 33 A.D.3d 875, 878, 823 N.Y.S.2d 463 (2006) (emphasis added). Here, plaintiffs acknowledge that Defendants Giordano and Doe did not act in any supervisory capacity. Moreover, there are no allegations in the complaint that defendants Sena and Caputo were "employers" for purposes of plaintiffs' claims for negligent hiring, retention, or supervision, or had any supervisory authority. Accordingly, plaintiffs' fifth cause of action for negligent administration is dismissed as against defendants Sena, Giordano, Doe, and Caputo.

 With respect to defendant Deletis, however, the complaint alleges that much of the misconduct alleged was done with his approval. *Amended Complaint* ¶ 34. This allegation can be fairly read to allege that Deletis had some supervisory authority. Accordingly, plaintiffs' fifth cause of action for negligent administration is sustained with respect to defendant Deletis.

as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). "Similarly, a claim for negligent infliction of emotional distress also requires a showing of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *D'Angelo–Fenton v. Town of Carmel Police Dep't.,* 470 F.Supp.2d 387, 400 (S.D.N.Y.2007).

## G. Breach of Fiduciary Duty

 Defendants move to dismiss plaintiff Romano's sixth cause of action for breach of fiduciary duty on the grounds that the statute of limitations has run. Defendants' motion is denied.

 The statute of limitations on a claim for breach of fiduciary duty in New York State is one year. *See Holmes v. Lorch,* 329 F.Supp.2d 516, 523 (S.D.N.Y.2004). The complaint in this case was filed in March 2007. The complaint alleges that Romano was a patient at SLS in 2004 and 2005, indicating that his claim is time barred. Plaintiff however, submits an affidavit indicating that he was a patient at SLS until May 2006, and indicates that SLS records will so indicate. Although defendants argue that they are entitled to rely on the pleadings and that a motion to dismiss should be decided on the pleadings, this Court is disinclined to dismiss a potentially meritorious cause of action for a mere typographical error in the pleadings. Accordingly, plaintiffs are granted leave to amend the complaint to indicate the appropriate dates for plaintiff Romano's treatment at SLS.[4]

## III. Motion for a Stay

 Defendants move, pursuant to the doctrine of primary jurisdiction, for a stay in the proceedings pending the completion of the administrative process initiated by the Office of Mental Health. Defendants' motion is denied.

 "The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. The doctrine's central aim is to allocate initial decision making responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Ellis v. Tribune T.V. Co.,* 443 F.3d 71, 81 (2d Cir.2006) (internal quotations and citations omitted). "Recourse to the doctrine of primary jurisdiction is thus ap-

propriate 'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Id.* The doctrine also applies in governing the relationship between the federal courts and state administrative agencies. *See Johnson v. Nyack Hosp.,* 964 F.2d 116, 122–23 (2d Cir.1992).

The Second Circuit has generally focused on four factors in applying the doctrine: 1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; 2) whether the question at issue is particularly within the agency's discretion; 3) whether there exists a substantial danger of inconsistent rulings; and 4) whether a prior application to the agency has been made. *Id.* at 82–83.

 Courts "must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 83. In addition, "[i]n the primary jurisdiction context, whether an agency is statutorily authorized to resolve a particular issue is not itself determinative of whether to apply the doctrine. Rather, the pertinent questions are whether referral to the agency is necessary to promote uniformity and whether the agency's expertise would assist the court in resolving difficult factual issues." *Tassy v. Brunswick Hosp. Ctr., Inc.,* 296 F.3d 65, 73 (2d Cir.2002).

Defendants' primary argument is that whether the facility in question had a "rehabilitative focus" is best determined by OMH. While this argument has some merit, it is not sufficient to stay the proceedings. While Plaintiffs' allegations do address some questions of whether SLS had a rehabilitative focus, those questions are secondary to the primary causes of action. Indeed, several of plaintiffs' claims, such as their claim for negligent and intentional infliction of emotional distress, have little to do with the question of

---

4. Plaintiffs' original complaint attached, as Exhibit A, findings of OMH with respect to its investigation of SLS. Plaintiffs' First Amended Complaint refers to these same findings, *see*

*Amended Complaint* ¶ 31, but fails to attach such findings as an exhibit. Leave to amend the complaint to attach these findings is also granted.

whether the facility had a "rehabilitative focus". Moreover, the underlying factual questions, such as what treatment was given, and abuse suffered by the plaintiffs, are certainly within this Court's ability to evaluate, and would not be illuminated by the expertise of the OHM. Nor are the merits of such claims within OMH's discretion. Accordingly, defendants' motion to stay the proceedings is denied.

## IV. Class Certification

Plaintiffs move for class certification pursuant to Rules 23(a) and 23(b)(3). They seek certification of a class of patients who were under treatment of defendant SLS at any time between January 1, 2003 and the date of the complaint, and those treated before January 1, 2003 who were subject to a continuous course of treatment after that date. Plaintiffs' motion for class certification is granted.

■ A district court deciding whether class certification is appropriate must ascertain not only whether plaintiff's case meets the preconditions of Rule 23(a), but also whether it falls into one of the categories found in Rule 23(b). *Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 225 (2d Cir.2006). District courts are "afforded substantial leeway in deciding issues of class certification and it is proper to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial." *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 92 (S.D.N.Y. 2006) (internal quotations and citations omitted).

■ Plaintiffs must meet their burden by a preponderance of the evidence. *See Heerwagen*, 435 F.3d at 233. However, "[t]he district court is not permitted to conduct a preliminary inquiry into the merits of plaintiff's case at the class certification stage." *Id.* at 231. Rather, "[i]n making a certification decision, a judge must look somewhere 'between the pleading and the fruits of discovery.... Enough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain.'" *Id.*

### A. Rule 23(a)

Rule 23(a) lists preconditions to class certification. Rule 23(a) requires: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class.

### 1. Numerosity

■ The proposed class consists of hundreds of individuals treated at SLS, making joinder impracticable. There does not appear to be any dispute on this 23(a) precondition.

### 2. Commonality

■ The "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Attenborough*, 238 F.R.D. at 94. Plaintiffs argue that they are challenging systemic polices at SLS, which raise many common issues of law and fact.

■ Defendants argue that each of the putative class members would have suffered injuries in different ways. However, the grievances of the plaintiffs need not be identical. Where, as here, a plaintiff alleges injury from a common policy, the commonality requirement is met. *See Jane B. v. New York City Dep't of Social Services*, 117 F.R.D. 64, 70 (S.D.N.Y.1987) (plaintiffs challenging treatment at social services centers met the commonality requirement because there were "common questions of fact as to whether defendants have failed to provide plaintiffs with adequate medical, psychological, counseling and educational services, safe and sanitary conditions, and adequate supervision" and "common question of law as to whether the alleged deficiencies are violative of the Due Process Clause of the Fourteenth Amendment or the laws of New York State.").

Defendants cite two cases in support of their contention that the commonality requirement is not met. In *Kent–Chojnicki v. Runyon,* employees of the U.S. Postal Service were denied class certification in a Rehabilitation Act claim because the claims involved far too many individualized determinations regarding how the employee was disabled and how they were discriminated against. 180 F.R.D. 237 (W.D.N.Y.1998). That case is inapposite because plaintiffs here are alleging wrongs by virtue of a common set of policies. The second case is *Universal Calvary Church v. City of New York,* 177 F.R.D. 181 (S.D.N.Y.1998). In that case, church members who alleged police brutality from a single incident could not be certified as a class. The Court again reasoned that the claims and injuries would be too individualized. However, like the *Kent–Chojnicki* case, *Universal Calvary* did not involve an allegation of a policy— rather it involved one incident in which there were many victims. Of course the presence of multiple plaintiffs—a pre-requisite for class certification—will almost always involve *some* individualized determinations, such as with respect to individual damages. But where, as here, plaintiffs' complaint alleges misconduct as a result of a *single overarching policy, common* questions of law and fact abound. Plaintiffs have therefore met the commonality requirement.

### 3. Typicality

 Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Attenborough,* 238 F.R.D. at 94. "The typicality criterion does not require that the factual predicate of each claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* (internal quotations and citations omitted). Plaintiffs, who allege various acts of isolation, invasions of privacy, fraud, and abuse by the defendants, are alleging essentially the same wrongs as the proposed class members. Defendants only argument against typicality is that, again, some individualized determinations will be required. But as in the case of the commonality requirement, some individual differences do not preclude certification of a class where, as here, the name plaintiffs' central claim is the same as the class members. Plaintiffs' have therefore met the typicality requirement as well.

### 4. Fair and Adequate Representation

 "The final prerequisite for class certification under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class." *Harris v. Initial Sec., Inc.,* No. 05 Civ. 3873, 2007 WL 703868, *5, 2007 U.S. Dist. LEXIS 18397, *19 (S.D.N.Y. March 7, 2007) "This requires that the proposed class representative ... have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members." *Id.* (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006)). "In addition, the court should assess the class representatives' credibility and trustworthiness, and whether they have sufficient knowledge of and involvement in the case so that they are able and willing to protect interests of class against possible competing interests of attorneys." *Id.*[5]

The plaintiffs here appear to have first hand knowledge of the SLS facility and would have an interest in pursuing the claims of the class.

Although defendants argue that plaintiffs cannot seek injunctive relief and therefore

---

**5.** This requirement also requires the Court to inquire as to whether plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation. *Trautz,* 846 F.Supp. at 1167. Defendants do not dispute plaintiffs' counsel's ability to conduct the litigation. In addition, the Court notes that counsel is an experienced civil rights litigator and has served as class counsel on more than one occasion, most recently in *Simpson v. New York State Civil Service Commission,* No. 04 civ. 1182 (N.D.N.Y.).

are not adequate class representatives, plaintiffs may still adequately represent the class in its claim for damages. *Trautz,* 846 F.Supp. at 1169–70 (denying class certification on injunctive relief because plaintiff lacked standing to bring claim for injunctive relief, but certifying class for damages claim). In any event, plaintiffs' claims for injunctive relief have been dismissed.

Additionally, defendants argue that plaintiffs are not members of the class because they were only patients at SLS for a portion of the time period for the proposed class. However, a class's claims must only be "fairly encompasses within the class representatives' claims." *See Cordes & Co. v. A.G. Edwards & Sons,* No. 06 Civ. 2143, 502 F.3d 91, 101 (2d Cir.2007). Accordingly, plaintiffs Romano and Morgan fairly and adequately represent a class of patients who were treated at the same times that they were, i.e. from July 2004 to May 31, 2006. *See Trautz,* 846 F.Supp. at 1166.

### B. Rule 23(b)

 Plaintiffs here assert a class under Rule 23(b)(3), which provides that a class action may be maintained where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. Pro.* 23(b). The matters pertinent to these findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. *Id.*

 "Rule 23(b)(3) tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. To meet the predominance requirement of Rule 23(b)(3)—i.e., that questions of law or fact common to the members of the class predominate over any questions affecting only individual members,—a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen,* 435 F.3d at 226. "This requirement is more demanding than the commonality requirement of Rule 23(a)." *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 226 F.R.D. 456, 468 (S.D.N.Y. 2005). "Predominance will be established if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (internal quotations omitted).

Here, plaintiffs meet the requirements of Rule 23(b)(3) in that the generalized proof outweighs the individualized proof. In particular, plaintiffs' allegations regarding policies at SLS, as well as the failure to train and supervise, are generalized. In addition, many of the individual harms are common to the class. In addition, litigating each individual claim, especially in light of the numerous common factual and legal questions, would be costly and inefficient. Nor is there any indication that any of the proposed class members would have a particular interest in individual prosecution of the action.

With respect to Rule 23(b)(3) certification, defendants again argue that some individualized determinations will be required here. But as noted already this would be the case in almost any class action. Where, as here, plaintiff is arguing injury from systemic practices and policies, common issues will often outweigh the individual ones. *See id.* ("Where plaintiffs are allegedly aggrieved by a single policy of the defendants in a case with strong commonality of the violation and the harm, this can be precisely the type of situation for which the class action device is suited.") (internal quotations omitted). Accordingly, certification of a class pursuant to Rule 23(b)(3) is appropriate.

### V. Conclusion

For the reasons above,

1. Defendants' motion to dismiss is granted in part. Plaintiffs' claims for injunctive relief are dismissed. Plaintiffs' claims under the Americans with Disabilities Act are dismissed. Plaintiffs' claims under the Rehabilitation Act are dismissed. Plaintiffs' fifth cause of action for negligent administration is dismissed as against defendants Sena, Giordano, Doe, and Caputo. Defendants' motion to dismiss plaintiffs' remaining claims is denied.

2. Defendants' motion for a stay is denied.

3. Plaintiffs' motion to certify a class under Rule 23(a) & (b) (3) is granted. The class is defined as persons who resided at SLS between July 2004 and May 31, 2006.

*It is so ordered.*

